POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant
and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| KHAN M. HASAN, on behalf of himself and all others similarly situated,<br><br>                  Plaintiff,<br><br>   v.<br><br>TWITTER, INC., JACK DORSEY, and NED SEGAL,<br><br>                Defendants. | Case No.: 4:19-cv-07149-YGR<br><br>NOTICE OF MOTION AND MOTION OF THE WESTON FAMILY PARTNERSHIP LLLP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br><u>CLASS ACTION</u><br><br>Date:  February 4, 2020<br>Time:  2:00 p.m.<br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Courtroom:  1 – 4th Floor |

| | |
|---|---|
| KHAFRE BARCLIFT, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>TWITTER, INC., JACK DORSEY, and NED SEGAL,<br><br>                              Defendants. | Case No.: 5:19-cv-07992-BLF<br><br><br>CLASS ACTION |

# TABLE OF CONTENTS

NOTICE OF MOTION ...................................................................................................1

SUMMARY OF ARGUMENT ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................3

I.    PRELIMINARY STATEMENT ..........................................................................3

II.   STATEMENT OF FACTS ...................................................................................4

III.  ARGUMENT ........................................................................................................8

      A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ...............8

      B.    THE WESTON FAMILY PARTNERSHIP SHOULD BE APPOINTED
            LEAD PLAINTIFF ...................................................................................8

            1.    The Weston Family Partnership Is Willing to Serve as Class
                  Representative ...........................................................................10

            2.    The Weston Family Partnership Is the Most Adequate Plaintiff
                  within the Meaning of the PSLRA ............................................10

                  a.    The Weston Family Partnership Has the Largest Financial
                        Interest in the Related Actions ......................................11

                  b.    The Weston Family Partnership Otherwise Satisfies the
                        Requirements of Rule 23 ...............................................12

      C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
            APPROVED ...........................................................................................14

IV.   CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

*Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF,
2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11, 2014)................................12

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK,
2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012) .....................................2, 11

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .........................................................12

*Hessefort v. Super Micro Comput., Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018) ...........................................12

*In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK,
2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ..............................12

*Knox v. Yingli Green Energy Holding Co.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...........................................2, 11

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ...............................2, 11

*Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC,
2013 U.S. Dist. LEXIS 93119 (N.D. Cal. July 2, 2013)................................1, 8

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ..............................11

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ..............................2, 11

*Osher v. Guess?, Inc.*,
2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ..............................14

*Richardson v. TVIA, Inc.*, No. C-06-06304 RMW,
2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ........................1, 8, 12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003).........................................................13

*Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-CV-05235-RMW,
2012 U.S. Dist. LEXIS 21590 (N.D. Cal. Feb. 21, 2012) ...........................1, 8

## Statutes

15 U.S.C. § 77z-1 .......................................................................*passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15 U.S.C. § 78u-4 ............................................................................................................ 3, 14

15 U.S.C. § 78j(b) ................................................................................................................ 3

15 U.S.C. §78t(a) ................................................................................................................. 8

**<u>Rules</u>**

Federal Rule of Civil Procedure 23 ............................................................................... *passim*

Federal Rules of Civil Procedure 42 ............................................................................. 1, 3, 8

## NOTICE OF MOTION

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on Tuesday, February 4, 2020, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, at the Oakland Federal District Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, Oakland, California 94612, the Weston Family Partnership LLLP (the "Weston Family Partnership" or "Movant")[1] will and hereby does respectfully move this Court pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order: (1) consolidating the above-captioned actions (the "Related Actions"); (2) appointing the Weston Family Partnership as Lead Plaintiff in the Related Actions on behalf of all persons and entities who purchased Twitter, Inc. ("Twitter" or the "Company") securities from August 6, 2019 through October 23, 2019, inclusive (the "Class Period") (the "Class"); and (3) approving the Weston Family Partnership's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel.

## SUMMARY OF ARGUMENT

To the extent that this motion seeks consolidation, it is made on the grounds that the Related Actions are putative class actions alleging violations of the federal securities laws by overlapping defendants and arising from the same alleged fraudulent misconduct.  As such, the Related Actions involve common questions of both law and fact, and their consolidation pursuant to Rule 42(a) is appropriate and warranted. Fed. R. Civ. P. 42(a); *see also Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *6 (N.D. Cal. Apr. 16, 2007); *Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC, 2013 U.S. Dist. LEXIS 93119, at *10 (N.D. Cal. July 2, 2013); *Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-CV-05235-RMW, 2012 U.S. Dist. LEXIS 21590, at *9 (N.D. Cal. Feb. 21, 2012).

---

[1] The Weston Family Partnership is an investment vehicle established for estate planning purposes and for transferring assets to members of the Weston family.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

To the extent that this motion seeks appointment of the Weston Family Partnership as Lead Plaintiff, this motion is made on the grounds that the Weston Family Partnership is the "most adequate plaintiff" to lead the Class within the meaning of the PSLRA and that the PSLRA therefore mandates the Weston Family Partnership's appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). The Weston Family Partnership is entitled to a rebuttable presumption favoring its appointment, since it has the "largest financial interest" in the relief sought by the Class in the Related Actions by virtue of, *inter alia*, its losses of approximately $473,033, which were suffered as a result of the above-captioned defendants' ("Defendants") wrongful conduct as alleged in the Related Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997) (determining financial interest by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013) ("District courts commonly refer to the four-factor [*Lax*] test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate losses suffered."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at *10-*11 (N.D. Cal. Jan. 9, 2012) (same); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (same). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g., Nicolow*, 2013 U.S. Dist. LEXIS, at *18-*19; *Knox*, 135 F. Supp. 3d. at 1163. Thus, as the movant with the largest known financial interest in the Related Actions, the Weston Family Partnership believes it is presumptively the most adequate lead plaintiff within the meaning of the PSLRA.

The Weston Family Partnership also satisfies the requirements of Fed. R. Civ. P. 23 ("Rule 23") because its claims are typical of the claims of other putative Class members and because it will fairly and adequately represent their interests.

In addition, the PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. The Weston Family Partnership's choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the Related Actions effectively and expeditiously under the Weston Family Partnership's direction.

This motion is supported by the memorandum of points and authorities submitted herewith, the Declaration of Jennifer Pafiti, Esq. ("Pafiti Decl."), and all exhibits thereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Presently pending in this District are two actions (the Related Actions) alleging violations of Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") (17 C.F.R. § 240.10b-5), on behalf of all purchasers of Twitter common stock and/or securities during the Class Period, against Twitter and certain of its officers and directors. The Weston Family Partnership hereby moves for these two actions to be consolidated pursuant to Rule 42(a) because they involve common questions of law and fact and because consolidation here would promote judicial economy.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that is shown to be the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the one that possesses the "largest financial interest" in the outcome of the litigation and that satisfies the requirements of Fed. R. Civ. P. 23. *Id.* The Weston Family Partnership believes that it should benefit from a rebuttable presumption arising from its having the largest financial interest in this litigation.

The Weston Family Partnership purchased 50,000 shares of Twitter securities during the Class Period, expended $2,143,099 on its purchases, retained 50,000 of its Twitter shares, and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $473,033 in connection with its purchases of Twitter securities. *See* Pafiti Decl., Ex. A.

Beyond its significant financial interest, the Weston Family Partnership also meets the applicable requirements of Rule 23 because its claims are typical of absent class members and because it will fairly and adequately represent the interests of the Class.

In order to fulfill its responsibilities as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, the Weston Family Partnership has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors.  In 2018 alone, Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth largest class action settlement ever achieved in the United States, as well as an $80 million recovery on behalf of investors in Yahoo! securities.  Based in New York, Pomerantz has offices in Chicago, Los Angeles, and Paris, France.

Based on its being the "most adequate plaintiff," its significant financial interest, its satisfaction of Rule 23 requirements, and its commitment to overseeing the Related Actions, the Weston Family Partnership respectfully requests that the Court enter an order appointing it as Lead Plaintiff and approving Pomerantz as Lead Counsel.

## II.     STATEMENT OF FACTS

As alleged in the Complaint of the first-filed of the Related Actions ("Hasan Complaint"), Twitter describes itself as a global platform for public self-expression and conversation in real time.  *See* Hasan Complaint ¶ 2.  Twitter is available in more than forty languages around the world.  *Id.*  The service can be accessed via twitter.com, an array of

4

NOTICE OF MOTION AND MOTION OF THE WESTON FAMILY PARTNERSHIP LLLP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 4:19-cv-07149-YGR; 5:19-cv-07992-BLF

mobile devices via Twitter owned and operated mobile applications (*e.g.*, Twitter for iPhone and Twitter for Android), and SMS (text messaging). *Id.*

Twitter generates the substantial majority of its revenue from advertising. *Id.* ¶ 3. Twitter enables its advertisers to target an audience based on a variety of factors, including a user's interests—called an "interest graph". *Id.* The interest graph maps, among other things, interests based on users followed and actions taken on our platform, such as Tweets created and engagement with Tweets. *Id.* In addition, when someone joins Twitter, it asks users for their permission to use their device settings and data—additional information which helps Twitter and its advertisers to target consumers. *Id.*

On August 6, 2019, Twitter publicly disclosed through a tweet that it recently found issues where certain user settings choices designed to target advertising were not working as intended. *Id.* ¶ 4. Twitter represented that "**We recently discovered and fixed** issues related to your settings choices for the way we deliver personalized ads, and when we share certain data with trusted measurement and advertising partners" (emphasis added). *Id.*

However, unknown to investors, while Twitter represented that it "fixed" certain issues relating to user choice settings, Defendants failed to disclose that the changes implemented to fix these issues adversely affected Twitter's ability to target advertising, including the targeting of advertising through its Mobile App Promotion ("MAP") product, which caused a material decline in advertising revenue. *Id.* ¶ 5.

On October 24, 2019, before the market opened, the Company disclosed its financial results for the quarter ended September 30, 2019 and conducted a conference call with investors. *Id.* ¶ 6. Twitter's revenue of $823.7 million was over 5% lower than analysts' estimate of $874.0 million. *Id.* Weaker-than-expected advertising revenues caused this revenue shortfall. *Id.*

During the conference call, Defendant Jack Dorsey, Twitter's Chief Executive Officer, disclosed that software defects caused by the changes implemented before the beginning of the

1
2
3

Class Period had negatively affected the Company's third quarter financial results and that the negative effects on advertising revenue would continue through at least the fourth quarter of 2019:

4
5
6
7
8
9
10
11
12

> [U]nfortunately, we had some missteps and bugs in our map ads . . . In aggregate, issues relating to our revenue products reduced year-over-year growth by 3 or more points in Q3. We discovered and took steps to remediate bugs that largely affected our legacy map product. These bugs affected our ability to target ads and share data with measurement and partners. We also discovered that certain personalization and data sightings were not operating as expected. These issues were in our control and we will work to do better. . . . Looking ahead, while retaking steps to remediate the product issues we've described, **we expect them to continue to weigh on the overall performance of our ads business in the near term**. Specifically, we expect a moderated performance in MAP and issues discussed in our personalization and data settings will likely result in 4 or more points of reduced year-over-year growth for total revenue in Q4, from 3 or more points of impact in Q3, reflecting a full quarter impact in Q4 versus only a partial quarter impact in Q3. This is incorporated into our guidance.

13

(Emphasis added.)  *Id.* ¶ 7.

14
15
16

On this news, Twitter's shares declined from a closing price of $38.83 per share on October 23, 2019, to close at $30.73 per share, a decline of $8.10 per share, or over 20%, on heavier than average trading volume (over 105 million shares traded).  *Id.* ¶ 8.

17
18
19

Also on October 24, 2019, the *Wall Street Journal* published an article titled "Twitter Shares Plunge as Ad-Business Troubles Weigh on Growth."  The article stated, in part, the following:

20
21
22

> Technical glitches in Twitter Inc.'s advertising software roiled the social-media company in the third quarter, as a pullback in spending from some buyers and weaker pricing for ads cut into revenue and profit even though it added millions of new users . . . .

23
24
25
26
27

> The company said malfunctions in ad-targeting software as well as weaker-thanexpected spending in July and August hurt its performance. The software problems meant that Twitter couldn't serve ads to users with the same level of precision as it normally does, prompting some advertisers to pause or reduce spending. For example, a burger restaurant's ads might have been delivered to a wide swath of users, including vegetarians and people who live long distances away, making them less effective than if they were sent to meat lovers who live near the restaurant, said Wedbush analyst Michael Pachter.

28

> Revenue rose 9% from a year ago to $824 million, marking the smallest annual
> increase since late 2017 and below the $873.9 million that analysts polled by
> FactSet were expecting. Advertising revenue accounted for 85% of the company's
> total. Twitter said it expects the negative impact on ad sales to persist in the
> current quarter . . . .
>
> The snafus with Twitter's ad business came as a surprise to most analysts, said
> Cascend analyst Eric Ross. "No one was talking about this," he said. "The results
> were much worse from a revenue-per-user standpoint than we were expecting.
> This is shocking given the growth in daily active users."
>
> The company said it anticipates the issues that plagued the ad business in the July
> through September period to continue in the current quarter.

*Id.* ¶ 9.

On October 25, 2019, Wedbush issued a research report titled "Baby Bird Falls from
Nest, Goes Splat" that stated, in part, the following:

> Twitter's missteps in the quarter are unforgivable. The company discovered
> "bugs" in its ad delivery technology that interfered with its ability to effectively
> target users. By effective targeting, ROI for advertisers is enhanced, as ads are
> delivered to a receptive audience; in contrast, ads that are ineffectively targeted
> are often delivered to consumers who simply don't care and who are not receptive
> to the ad delivered. Twitter discovered that its "personalization and data settings"
> were buggy, and its ad pricing ("CPM") declined during the quarter as the mix of
> high priced video ads declined. We label these missteps as "unforgiveable"
> because Twitter has been in business for more than a decade and has been
> delivering ads for the last nine years. It is reasonable for investors to expect that
> the company's ad delivery technology will perform flawlessly; Twitter's Q3
> revenue shortfall is evidence that its technology did not work properly.
>
> We accept the company's assurance that it has "fixed" the "bugs", but we think
> there is some risk that it has lost the confidence of at least a portion of its
> advertisers. At the same time, we are skeptical that management is appropriately
> focused on driving new users to sign up, seeming (to us) complacent about
> driving its existing user base to sign onto Twitter more frequently. . .
>
> We are lowering our estimates to reflect lower than expected guidance and to
> reflect future growth rates that are similar to past rates . . . we are reducing our
> price target to $34.50 from $42 . . . .

*Id.* ¶ 10.

NOTICE OF MOTION AND MOTION OF THE WESTON FAMILY PARTNERSHIP LLLP FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT - 4:19-cv-07149-YGR; 5:19-cv-07992-BLF

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.  *Id.* ¶ 11.

## III. ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.  Fed. R. Civ. P. 42(a); *see also Richardson*, 2007 U.S. Dist. LEXIS, at *6; *Mulligan*, 2013 U.S. Dist. LEXIS, at *10; *Woburn Ret. Sys.*, 2012 U.S. Dist. LEXIS, at *9.

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed." 15 U.S.C. 78u-4(a)(3)(A)(ii).  As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the SEC, by the Defendants arising from the public dissemination of false and misleading information to investors.  Accordingly, the Related Actions should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

### B. THE WESTON FAMILY PARTNERSHIP SHOULD BE APPOINTED LEAD PLAINTIFF

Motions by proposed lead plaintiffs must be filed within 60 days of the publication of notice of the action, which in this case was published on October 30, 2019 (*see* Pafiti Decl., Ex.

8

B).  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii). The Weston Family Partnership's instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. § 78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most adequate plaintiff')."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). The Weston Family Partnership is the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" "is the person or group of persons that" (i) either filed the complaint or made a lead plaintiff motion; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii)  otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  As set forth below, the Weston Family Partnership satisfies all three of these criteria and thus believes that it is entitled to the rebuttable presumption that it is the most adequate plaintiff within the meaning of the PSLRA. Specifically, the Weston Family Partnership is willing to serve as Lead Plaintiff, has the largest financial interest in the Related Actions to its knowledge and otherwise strongly satisfies the requirements of Rule 23.

For all these reasons, as set forth in greater detail below, the Weston Family Partnership respectfully urges the Court to appoint it to serve as Lead Plaintiff overseeing the Related Actions.

1

### 1.     The Weston Family Partnership Is Willing to Serve as Class Representative

On October 30, 2019, counsel for the plaintiff in the first-filed of the Related Actions caused a notice (the "Notice") to be published over *PR Newswire* pursuant to § 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants and which advised investors in Twitter securities that they had 60 days from the date of the Notice—*i.e.*, until December 30, 2019—to file a motion to be appointed as lead plaintiff.  *See* Pafiti Decl., Ex. B.  The Weston Family Partnership has filed the instant motion pursuant to that Notice, and has attached a Certification executed by Steven Weston[2] attesting that the Weston Family Partnership is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See* Pafiti Decl., Ex. C.  Under the PSLRA, the Weston Family Partnership's actions were timely and legally sufficient.   Accordingly, the Weston Family Partnership readily satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.     The Weston Family Partnership Is the Most Adequate Plaintiff within the Meaning of the PSLRA

When faced with competing lead plaintiff motions, under 15 U.S.C. § 78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most adequate plaintiff')."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). The Weston Family Partnership is the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.

---

[2] Steven Weston is a Partner of both the Weston Family Partnership and the Weston Family Partnership Management Company, LLC ("WFPMC").  WFPMC, as the General Partner of the Weston Family Partnership, has authority to bind the Weston Family Partnership and enter into litigation on its behalf. Steven Weston, as an equal Partner of WFPMC, has authority to bind both WFPMC and the Weston Family Partnership, and to enter into litigation on behalf of both of those entities.

NOTICE OF MOTION AND MOTION OF THE WESTON FAMILY PARTNERSHIP LLLP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 4:19-cv-07149-YGR; 5:19-cv-07992-BLF

### a. The Weston Family Partnership Has the Largest Financial Interest in the Related Actions

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, the Weston Family Partnership has the largest financial interest of any Twitter investor seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered. 1997 U.S. Dist. LEXIS, at *17-*18. In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District. *See, e.g., Nicolow*, 2013 U.S. Dist. LEXIS, at *18 ("District courts commonly refer to the four-factor [*Lax*] test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate losses suffered."); *City of Royal Oak Ret. Sys.*, 2012 U.S. Dist. LEXIS, at *10-*11 (same); *Knox*, 136 F. Supp. 3d at 1163 (same). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g., Nicolow*, 2013 U.S. Dist. LEXIS, at *18-*19; *Knox*, 135 F. Supp. 3d. at 1163.

During the Class Period, the Weston Family Partnership (1) purchased 50,000 shares of Twitter securities; (2) expended $2,143,099 on its purchases of Twitter securities; (3) retained all 50,000 of its Twitter shares; and (4) as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $473,033 in connection with its purchases of Twitter securities. *See* Pafiti Decl., Ex. A. Thus, under the *Lax* factors, the Weston Family Partnership believes it has the largest financial interest among any potential lead plaintiff movants in the Related Actions, thereby entitling the Weston Family Partnership to a rebuttable presumption that it is the "most adequate plaintiff" within the

1    PSLRA's meaning (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)), given that it also satisfies the

2    requirements of Fed. R. Civ. P. 23.

3                    **b.      The Weston Family Partnership Otherwise Satisfies the**
                              **Requirements of Rule 23**
4

5             For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that the

6    movant is the "most adequate plaintiff," the movant must also demonstrate that the movant

7    "otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  A

8    *prima facie* showing suffices for this determination.  *Hessefort v. Super Micro Comput., Inc.*,

9    317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-

10   BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014).  "This showing need not

11   be as thorough as what would be required on a class certification motion and only needs to

12   satisfy typicality and adequacy."  *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK,

13   2017 U.S. Dist. LEXIS 11553, at *13 (N.D. Cal. Jan. 25, 2017).   The Weston Family

14   Partnership readily passes muster.

15            The Weston Family Partnership satisfies the threshold for Rule 23(a)(3) typicality.  "The

16   test of typicality 'is whether other members have the same or similar injury, whether the action

17   is based on conduct which is not unique to the named plaintiffs, and whether other class

18   members have been injured by the same course of conduct.'"  *Richardson*, 2007 U.S. Dist.

19   LEXIS, at *16 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

20   508 (9th Cir. 1992)).  The Weston Family Partnership's claims are typical of those of the Class

21   members.  Like all Class members, the Weston Family Partnership alleges that: (1) Defendants

22   violated the Exchange Act by making false or misleading statements of material facts and/or

23   omitting to disclose material facts concerning Twitter; (2) the Weston Family Partnership and

24   the Class members purchased Twitter securities during the Class Period at prices artificially

25   inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure

26   of those misrepresentations and/or omissions; and (3) the Weston Family Partnership and the

27

28

NOTICE OF MOTION AND MOTION OF THE WESTON FAMILY PARTNERSHIP LLLP FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT - 4:19-cv-07149-YGR; 5:19-cv-07992-BLF

Class members were damaged upon the revelation of Defendants' alleged misrepresentations or omissions through corrective disclosures that drove Twitter's share price downward. These shared claims, which are based on the same legal theories and arise from the same underlying facts and course of conduct, demonstrate the Weston Family Partnership's typicality under Rule 23(a)(3).

The Weston Family Partnership also satisfies the Rule 23(a)(4) adequacy requirement. In determining whether that requirement is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted). Here, the Weston Family Partnership has submitted a Certification executed by Steven Weston, Partner of both the Weston Family Partnership and its General Partner, WFPMC, declaring the Weston Family Partnership's commitment to protect the interests of the Class. *See* Pafiti Decl., Ex. C. The Weston Family Partnership has no conflicts of interest or antagonism with the Class of Twitter investors it seeks to represent. The Weston Family Partnership's significant losses from its purchases of Twitter securities during the Class Period demonstrate that it has a sufficient interest in the outcome of this litigation that aligns with the interests of Class members.

Indeed, the Weston Family Partnership has already demonstrated its ability to pursue securities claims through its choice of counsel, Pomerantz. Pomerantz is one of the nation's leading plaintiff-side securities litigation firms, as discussed in greater detail in § III.C., *infra*. The Weston Family Partnership's and Pomerantz's willingness and ability to zealously litigate the claims in this action on behalf of the Class cannot reasonably be questioned.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in a lead plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should not interfere with Lead Plaintiff's selection unless it is necessary to do so in order "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Weston Family Partnership has selected Pomerantz to serve as Lead Counsel for the Class.  Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80+ year history, as detailed in its firm resume.  *See* Pafiti Decl., Ex. D. Pomerantz is based in New York, with offices in Chicago, Los Angeles, and Paris, France.  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of Petrobras investors, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States.  As co-lead counsel in *In re Yahoo! Inc. Securities Litigation*, No. 17-cv-00373 (N.D. Cal.), Pomerantz recently secured a recovery of $80 million on behalf of Yahoo! investors, the first substantial shareholder recovery in a securities fraud class action related to a cybersecurity breach.  Courts in the Ninth Circuit and throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in many actions pending within the Ninth Circuit, including *Staublein v. ACADIA Pharmaceuticals, Inc.*, No. 18-cv-01657 (C.D. Cal.); *Barnes v. Edison International*, No. 18-cv-09690 (C.D. Cal.); and *Ferris v. Wynn Resorts Ltd.*, No. 18-cv-00479 (D. Nev.).

As a result of their extensive experience in similar litigation, the Weston Family Partnership's choice of counsel, Pomerantz, have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute the Related Actions effectively and expeditiously.

The Court may be assured that by approving the Weston Family Partnership's selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available.   Thus, the Weston Family Partnership respectfully urges the Court to appoint Pomerantz to serve as Lead Counsel.

## IV.     CONCLUSION

For the foregoing reasons, the Weston Family Partnership respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Weston Family Partnership as Lead Plaintiff for the Class; and (3) approving the Weston Family Partnership's selection of Pomerantz as Lead Counsel for the Class.

Dated:  December 30, 2019                    Respectfully submitted,


                                            POMERANTZ LLP

                                            */s/ Jennifer Pafiti*
                                            Jennifer Pafiti (SBN 282790)
                                            1100 Glendon Avenue, 15th Floor
                                            Los Angeles, California 90024
                                            Telephone: (310) 405-7190
                                            Email: jpafiti@pomlaw.com

                                            POMERANTZ LLP
                                            Jeremy A. Lieberman
                                            (*pro hac vice application forthcoming*)
                                            J. Alexander Hood II
                                            (*pro hac vice application forthcoming*)
                                            600 Third Avenue, 20th Floor
                                            New York, NY 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665
                                            Email: jalieberman@pomlaw.com
                                            Email: ahood@pomlaw.com

                                            POMERANTZ LLP
                                            Patrick V. Dahlstrom
                                            (*pro hac vice application forthcoming*)
                                            Ten South LaSalle Street, Suite 3505
                                            Chicago, Illinois 60603

NOTICE OF MOTION AND MOTION OF THE WESTON FAMILY PARTNERSHIP LLLP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 4:19-cv-07149-YGR; 5:19-cv-07992-BLF

Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*and Proposed Lead Counsel for the Class*

16

1

## **PROOF OF SERVICE**

2

I hereby certify that on December 30, 2019, a copy of the foregoing was filed

3

electronically and served by mail on anyone unable to accept electronic filing. Notice of this

4

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or

5

by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic

6

Filing. Parties may access this filing through the Court's CM/ECF System.

7

8                                        */s/ Jennifer Pafiti*
                                          Jennifer Pafiti

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF THE WESTON FAMILY PARTNERSHIP LLLP FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT - 4:19-cv-07149-YGR; 5:19-cv-07992-BLF