1   LATHAM & WATKINS LLP
    Michele D. Johnson (Bar No. 198298)
2     michele.johnson@lw.com
    650 Town Center Drive, 20th Floor
3   Costa Mesa, California 92626-1925
    Telephone: +1.714.540.1235
4   Facsimile: +1.714.755.8290

5   Elizabeth L. Deeley (Bar No. 230798)
      elizabeth.deeley@lw.com
6   505 Montgomery Street, Suite 2000
    San Francisco, California 94111-6538
7   Telephone: +1.415.391.0600
    Facsimile: +1.415.395.8095

8
    Hilary H. Mattis (Bar No. 271498)
9     hilary.mattis@lw.com
    140 Scott Drive
10  Menlo Park, CA 94025-1008
    Telephone: +1.650.328.4600
11  Facsimile: +1.650.463.2600

12  Andrew B. Clubok (*pro hac vice*)
    Susan E. Engel (*pro hac vice*)
13    andrew.clubok@lw.com
      susan.engel@lw.com
14  555 Eleventh Street, N.W., Suite 1000
    Washington, D.C. 20004-1304
15  Telephone: +1.202.637.2200
    Facsimile: +1.202.637.2201

16
    Attorneys for Defendants *Twitter, Inc.,*
17  *Jack Dorsey and Ned Segal*

18                  UNITED STATES DISTRICT COURT

19                NORTHERN DISTRICT OF CALIFORNIA

20                        OAKLAND DIVISION

21

22  IN RE TWITTER, INC. SECURITIES          Case No.: 4:19-cv-07149-YGR
    LITIGATION
23                                           **DEFENDANTS' NOTICE OF MOTION AND
                                             MOTION TO DISMISS THE
24  _____      CONSOLIDATED CLASS ACTION
                                             COMPLAINT; MEMORANDUM OF
    This Document Relates To:               POINTS AND AUTHORITIES IN SUPPORT
25                                           THEREOF**

26      ALL ACTIONS
                                             Date: October 13, 2020
27                                           Time: 2:00 p.m.
                                             Courtroom: 1
28                                           Hon: Yvonne Gonzalez Rogers

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                             DEFENDANTS' NOT. OF MOT. AND MOT. TO
                                             DISMISS CONS. CLASS ACTION COMPLAINT
                                             Case No.: 4:19-cv-07149-YGR

1

**NOTICE OF MOTION AND MOTION**

2

**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on October 13, 2020, at 2:00 p.m., in Courtroom 1 of the

4   United States District Court for the Northern District of California, located at 1301 Clay Street,

5   Oakland, California, Defendants Twitter, Inc. ("Twitter" or the "Company"), Jack Dorsey and

6   Ned Segal (together, the "Individual Defendants" and with Twitter, "Defendants") will and

7   hereby do move for an order dismissing Plaintiffs' Consolidated Class Action Complaint, Dkt.

8   50 ("CAC" or "Complaint") on the ground that it fails to state a claim under Federal Rules of

9   Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, Pub.

10  L. 104-67, 109 Stat. 737 ("PSLRA").  This motion is based on the Memorandum of Points and

11  Authorities, the Declaration of Susan E. Engel in Support of the Motion to Dismiss the

12  Consolidated Class Action Complaint ("Engel Decl.") and attached exhibits, the Request for

13  Judicial Notice in Support of the Motion to Dismiss the Consolidated Class Action Complaint

14  ("Request for Judicial Notice"), and all other matters properly before the Court.

15          Twitter seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing

16  with prejudice Plaintiffs' claims for failure to state a claim upon which relief can be granted.

17

**STATEMENT OF ISSUES**

18          Whether the Complaint fails to state a claim under Section 10(b) and Section 20(a) of the

19  Securities Exchange Act of 1943 ("Exchange Act"), 15 U.S.C. § 78j(b).

20

21  DATED:  June 12, 2020                    LATHAM & WATKINS LLP

22                                          */s/ Michele D. Johnson*
                                            Michele D. Johnson (Bar No. 198298)
23                                            *michele.johnson@lw.com*
                                            650 Town Center Drive, 20th Floor
24                                          Costa Mesa, California 92626-1925
                                            Telephone:  +1.714.540.1235
25                                          Facsimile:  +1.714.755.8290

26                                          Elizabeth L. Deeley (Bar No. 230798)
                                              *elizabeth.deeley@lw.com*
27                                          505 Montgomery Street, Suite 2000
                                            San Francisco, California 94111-6538
28                                          Telephone:  +1.415.391.0600

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1          DEFENDANTS' NOT. OF MOT. AND MOT. TO
           DISMISS CONS. CLASS ACTION COMPLAINT
           Case No.: 4:19-cv-07149-YGR

1

Facsimile:  +1.415.395.8095

2

Hilary H. Mattis (Bar No. 271498)
*hilary*.mattis@lw.com

3

140 Scott Drive
Menlo Park, CA 94025-1008

4

Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600

5

6

Andrew B. Clubok (*pro hac vice*)
Susan E. Engel (*pro hac vice*)

7

*andrew.clubok@lw.com*
*susan.engel@lw.com*

8

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304

9

Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201

10

Attorneys for Defendants *Twitter, Inc.,*
*Jack Dorsey and Ned Segal*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................... 1

II.   BACKGROUND ........................................................................................................ 3

      A.    Twitter's Advertising Business and MAP Product ................................................. 3

      B.    Twitter Discovers, Discloses, and Fixes MAP Privacy Bugs ............................... 5

      C.    Twitter Announces Q3 Revenue Within Guidance and Discloses
            Additional Information About the Effect of Fixing MAP Privacy
            Bugs .................................................................................................................... 5

III.  LEGAL STANDARD ............................................................................................... 6

IV.   ARGUMENT ........................................................................................................... 6

      A.    Plaintiffs Do Not Plead a Material Misrepresentation or Omission ..................... 7

            1.    Statements 1-4:  Q2 Shareholder Letter & Quarterly Report ................... 7

            2.    Statement 5:  August 6, 2019 Tweet ....................................................... 11

            3.    Statements 6-7:  September 4, 2019 Citi Global
                  Technology Conference ........................................................................... 12

      B.    The Complaint Fails to Allege a Strong Inference of Scienter ........................... 15

            1.    Monitoring of Key Metrics ...................................................................... 16

            2.    Prominence of MAP Product and Impact on Multiple
                  Products .................................................................................................. 18

            3.    Alleged Privacy Violations ...................................................................... 20

            4.    Considered Holistically, the More Plausible Inference is
                  Nonculpable ............................................................................................ 20

      C.    The Complaint Fails to Allege With Particularity Loss Causation ...................... 22

      D.    The Complaint Fails to State a Claim Under Section 20(a) ................................ 23

V.    CONCLUSION ....................................................................................................... 23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## CASES

4

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) .......................................................................19

5

6

*In re Apple Inc. Sec. Litig.*,
No. 19-CV-02033-YGR, 2020 WL 2857397 (N.D. Cal. June 2, 2020) ..................18

7

8

*In re Atossa Genetics, Inc. Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017) .......................................................................................6

9

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)......................................................................................................14

10

11

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ......................................................................................18

12

13

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) ......................................................................21

14

15

*Brody v. Transitional Hosp. Corp.*,
280 F.3d 997 (9th Cir. 2002) ......................................................................................12

16

*Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*,
No. 11-01016 SC, 2012 WL 685344 (N.D. Cal. Mar. 2, 2012)...............................21

17

18

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) .......................................................................................7

19

20

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ....................................................................21

21

22

*City of Sunrise Fire Pension Fund v. Oracle Corp.*,
No. 18-CV-04844-BLF, 2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .................14

23

*Colyer v. Acelrx Pharm., Inc.*,
No. 14-CV-04416-LHK, 2015 WL 7566809 (N.D. Cal. Nov. 25, 2015)................12

24

25

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .......................................................................................7

26

*In re Daou Sys., Inc. Sec. Litig*,
411 F.3d 1006 (9th Cir. 2005) ....................................................................................15

27

28

*In re Dynavax Sec. Litig.*,
No. 4:16-CV-06690-YGR, 2018 WL 2554472 (N.D. Cal. June 4, 2018)..........8, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ...........................................................................................15

*In re Facebook, Inc. Sec. Litig.*,
   405 F. Supp. 3d 809 (N.D. Cal. 2019) ......................................................................... *passim*

*In re Fusion-io, Inc. Sec. Litig.*,
   No. 13-CV-05368-LHK, 2015 WL 661869 (N.D. Cal. Feb. 12, 2015)...............................19

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) .............................................................................................16

*In re Intel Corp. Sec. Litig.*,
   No. 19-cv-00507-YGR, 2019 WL 1427660 (N.D. Cal. Mar. 29, 2019)..............................14

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
   No. 17-CV-05558-HSG, 2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) .......................12, 14

*Jui-Yang Hong v. Extreme Networks, Inc.*,
   No. 15-cv-04883-BLF, 2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ................................14

*Kim v. Advanced Micro Devices, Inc.*,
   No. 5:18-CV-00321-EJD, 2019 WL 2232545 (N.D. Cal. May 23, 2019).............................10

*Kovtun v. VIVUS, Inc.*,
   No. C 10-4957 PJH, 2012 WL 4477647 (N.D. Cal. Sept. 27, 2012)....................................22

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ...............................................................................13, 18, 23

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ..............................................................................................22

*M & M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*,
   No. CV 17-1479 PA, 2017 WL 5635424 (C.D. Cal. Aug. 20, 2017)...................................14

*McGovney v. Aerohive Networks, Inc.*,
   367 F. Supp. 3d 1038 (N.D. Cal. 2019) ..............................................................................12

*McGovney v. Aerohive Networks, Inc.*,
   No. 18-CV-00435-LHK, 2019 WL 8137143 (N.D. Cal. Aug. 7, 2019).................................20

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ............................................................................................22

*Nguyen v. Endologix, Inc.*,
   --F. 3d --, No. 18-56322, 2020 WL 306977 (9th Cir. June 10, 2020) .......................15, 16, 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

*No. 84 Emp'r–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ............................................................................................9

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
   No. 15-CV-02938-HSG, 2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ...............................8

*In re OmniVision Techs., Inc. Sec. Litig.*,
   937 F. Supp. 2d 1090 (N.D. Cal. 2013) ...........................................................................12

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) .....................................................................................6, 15

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ...........................................................................9, 18, 20

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) .........................................................................................6

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ....................................................................................8, 20

*Rodriguez v. Gigamon Inc.*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018) ...........................................................................22

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) .........................................................................................7

*Sanchez v. IXYS Corp.*,
   No. 17-cv-06441-WHO, 2018 WL 4787070 (N.D. Cal. Oct. 2, 2018) ...............................12

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...........................................................................21

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ........................................................................................13

*In re Silicon Image, Inc. Sec. Litig.*,
   No. C-05-456 MMC, 2007 WL 607804 (N.D. Cal. Feb. 23, 2007) ......................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).....................................................................................................15

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .............................................................................6

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) ...................................................................8, 11, 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ..............................................................................7

*Wanca v. Super Micro Comp., Inc.*,
   No. 5:15-cv-04049-EJD, 2018 WL 3145649 (N.D. Cal. Jun. 27, 2018) ...............................11

*Xiaojiao Lu v. Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019) ..............................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................... *passim*

## STATUTES

15 U.S.C.
   § 78u-4(b)(1)(B)..........................................................................................7
   § 78u-4(b)(2) ............................................................................................15

## RULES

Fed. R. Civ. P. 9(b) ...............................................................................3, 6, 7, 13

## REGULATIONS

17 C.F.R.
   § 240.10b-5 ..................................................................................................6
   § 240.10b5-1 ...........................................................................................21, 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1
## MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.   INTRODUCTION

3
Consistent with its commitment to transparency, Twitter disclosed to users on August 6,

4
2019, that software bugs had inadvertently caused it to share certain user data through one of its

5
advertising products, Mobile Application Promotion ("MAP"), even when users had not given

6
permission to do so, and that Twitter had promptly corrected the issue.  From this laudable effort

7
to be transparent with users about a privacy correction, Plaintiffs have spun claims of securities

8
fraud.  They conclude, without factual support, that Twitter failed to disclose a material revenue

9
impact from Twitter's remediation of the software bugs.  But nothing in the Complaint comes

10
close to suggesting that Twitter, its CEO Jack Dorsey, or its CFO Ned Segal knew at the time

11
Twitter disclosed the software bugs that advertiser demand for the MAP product would decline

12
in a way that materially impacted third quarter revenues and hid that information from the

13
market.  In fact, Twitter had already warned investors through its risk factor disclosures that

14
software bugs could result in a loss of advertising revenue.  At the end of the third quarter,

15
Twitter disclosed that the remediation of the software bugs had resulted in a three percent impact

16
on third quarter (Q3) revenue growth (even though revenues still fell within the market guidance

17
Twitter had previously provided).  Plaintiffs point to no facts attributing the resulting stock drop

18
to fraud—as opposed to analysts' and investors' disappointment with the Company's technical

19
shortcomings in delivering advertising.  The Complaint should be dismissed with prejudice for

20
several, independent reasons.

21
*First*, Plaintiffs do not plead facts that would make any of the challenged seven

22
statements materially false or misleading.  Plaintiffs speculate that by "no later than" July 26,

23
2019 (the beginning of the proposed class period), Twitter had already discovered the MAP-

24
related bugs and somehow knew that its corrective action would materially affect Twitter's

25
revenue.  CAC ¶ 103.  But there is not a single factual allegation suggesting that Twitter knew of

26
the MAP-related bugs on July 26, 2019, or at the time of its second quarter ("Q2") filings.  And

27
Plaintiffs' allegation that by that date advertisers had **already** reduced spending in response to a

28
fix **that would occur and be announced nearly two weeks later** defies common sense.  At any

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   rate, Twitter did not purport to speculate in its disclosure to users about a possible revenue

2   impact, and it had no obligation to do so.  In fact, Twitter had already warned investors in its Q2

3   filings of exactly such a risk from software bugs.  Given these deficiencies, Plaintiffs are left

4   with Defendant Segal's statements made a month later at an investor conference, that Twitter's

5   work to improve the MAP product was "ongoing" and that the Asia market had historically been

6   more MAP-focused than the United States.  *Id.* ¶¶ 115, 118.  But the purportedly omitted

7   revenue facts are not inconsistent with either of Mr. Segal's statements, which did not suggest to

8   investors anything at all about MAP revenue or Q3 revenue.  Nor are there any specific facts to

9   support an allegation that MAP revenue had materially declined by the September 4 conference

10   (or even by the end of Q3).

11        *Second*, Plaintiffs' allegations fall far short of the stringent scienter pleading

12   requirements.  Plaintiffs plead no plausible facts that Defendants made any alleged

13   misstatements intentionally or with deliberate recklessness.  Plaintiffs do not allege any unusual

14   or suspicious sales by either Individual Defendant, and the Complaint lacks any confidential

15   witness allegations remotely suggesting that Defendants had any contemporaneous information

16   that rendered their statements false or misleading.  The only allegations as to the Individual

17   Defendants are that they received daily emails containing summaries of alleged "Key Metrics,"

18   including Cost Per Ad Engagement ("CPE").  *Id.* ¶¶ 13, 125.  But Plaintiffs' allegations are

19   based on stale discovery responses about emails sent in 2015 (not in 2019)—and are based on a

20   metric that did not provide any information specific to MAP, which is just one of Twitter's many

21   advertising products.  Plaintiffs do not explain how any change in the overall CPE metric could

22   measure a change in Twitter's MAP revenues, rather than measuring, as disclosed in Twitter's

23   SEC filings, changes in demand for all of Twitter's various pay-for-performance advertising

24   products.  Plaintiffs' allegations about the "prominence" of the MAP product do not help them.

25   It is not "absurd" that Defendants would not know about an unspecified decline in one product

26   among many, and there are no allegations that Individual Defendants knew of a specific metric

27   measuring MAP revenue alone during the third quarter.  In any event, none of these allegations

28   (considered alone or together) meets the specificity requirements imposed by the PSLRA and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1    Rule 9(b) to establish that the Defendants made the challenged statements with the requisite state

2    of mind.

3        **Third**, the Complaint does not adequately plead loss causation.  Plaintiffs point to a

4    single price drop on October 24, 2019, following the announcement of Q3 revenue results.  But

5    they fail to allege that the price decline on that day was caused by the revelation of fraudulent

6    activity; instead, Plaintiffs cite analyst reports reflecting that the drop was due to investors'

7    expectations that "the company's ad delivery technology will perform flawlessly [and] Twitter's

8    Q3 revenue shortfall is evidence that its technology did not work properly."  *Id.* ¶ 122.

9    Technology bugs are not securities fraud, and courts in this Circuit are clear that the

10   announcement of disappointing results, alone, does not establish loss causation.

11   **II.    BACKGROUND**

12       **A.    Twitter's Advertising Business and MAP Product**

13       Twitter is a "global platform for public self-expression and conversation in real time."

14   *Id.* ¶ 39.  Twitter's users can access the service via twitter.com and on mobile devices through

15   mobile applications.  *Id.*  Users can access real-time information about a wide array of news and

16   events, and can share information and content (Tweet), interact with content, or express their

17   reactions to other Twitter users.  *Id.*  Twitter's users do not have to pay a fee to use the service;

18   instead, Twitter sells advertising on its platform to advertisers who want to reach its users.

19   Twitter generates a significant portion of its revenue from advertising.  *See id.* ¶ 43 (citing Ex. 1

20   (10-K)).[1]

21       Twitter sells multiple different advertising products that fall into three broad categories:

22   Promoted Tweets, Promoted Accounts, and Promoted Trends.  Ex. 1 (10-K) at 8.  Promoted

23   Tweets are ads that "appear within a user's timeline, search results or profile pages just like an

24   ordinary Tweet," (*id.*; *see also* CAC ¶ 56), and advertisers pay for them through an auction based

25   on either the impressions delivered (*e.g.*, the number of times an advertiser's ad is seen) or only

26   when users take certain actions (*e.g.*, liking a Tweet, clicking on a website link, installing an app,

27

28   _____
[1] References to "Ex." are to the exhibits attached to the Declaration of Susan E. Engel ("Engel
Decl.") filed herewith.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   or watching a video), *i.e.*, "pay-for-performance."  Ex. 1 (10-K) at 8, 54, 58.  Promoted Accounts

2   can also be pay-for-performance priced through an auction; Promoted Trends are a fixed fee.  *Id.*

3   at 58, 69.

4           Twitter's MAP product is a type of Promoted Tweet.  It provides a direct link to install or

5   open mobile applications (for example, a music or video game app) on the user's smartphone.

6   CAC ¶ 56.  MAP ads specifically prompt users to download an advertiser's mobile app, or

7   reengage with a mobile app the user has already downloaded.  *Id.* ¶ 8.  For MAP, pay-for-

8   performance means Twitter charges advertisers for each click on the "install" or "open" buttons

9   in the ad.  *Id.* ¶ 59.  Twitter tracks various metrics for MAP, including install and open attempts

10  and various conversion events and engagements, (*id.* ¶ 60), but Plaintiffs do not allege that any

11  of these MAP-specific metrics are Key Metrics, and they are not (*see* Ex. 1 (10-K) at 54; CAC ¶

12  46).

13          Rather, Plaintiffs tout throughout the Complaint (*e.g.*, CAC ¶¶ 46, 124) a CPE metric that

14  they do not allege breaks out MAP charges or is otherwise specific to the MAP product.  Instead,

15  as Twitter describes in its securities filings and Plaintiffs do not dispute, the CPE metric tracks

16  cost per ad engagement, and ad engagement is defined as a user interaction with any one of

17  Twitter's pay-for-performance advertising products.  *See* Ex. 1 (10-K) at 54.  MAP pay-for-

18  performance charges (*i.e.*, "downloading or engaging with a promoted mobile application") are

19  just one of many types of ad engagements that factor into the overall CPE metric.  *See id.*  As

20  Plaintiffs recognize, therefore, changes in the CPE metric are a measure of demand for all of

21  Twitter's pay-for-performance advertising products, not just MAP.  *See id.*; CAC ¶ 46.  For

22  example, Twitter explained in its 2018 10-K that it believed a decrease in the CPE metric

23  showed that advertisers were getting the same amount of user engagement (more users were

24  clicking on relevant ads) at a lower price, including by shifting to video ads.  *See* Ex. 1 (10-K) at

25  54.

26          MAP was first launched in April 2014.  CAC ¶ 56.  Contrary to Plaintiffs' unsupported

27  allegation that Defendants promised "an improved version of MAP in 2019" (*id.* ¶ 9),

28  Defendants have never set a specific deadline for a new MAP product.  Rather, Mr. Segal and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

Mr. Dorsey repeatedly stated that Twitter was "continuing to improve" its MAP product, and that ongoing work to improve the MAP product "will take place over multiple quarters." *Id.*; *see also* Ex. 5 (Q2 2019 Shareholder Letter, cited at CAC ¶ 104) at 11 (disclosing that "multiquarter efforts" to improve the MAP product were "continuing").

### B. Twitter Discovers, Discloses, and Fixes MAP Privacy Bugs

As Twitter has emphasized to its users, "[p]rotecting and defending user privacy is at the heart of our work.  From protecting user anonymity, to offering meaningful privacy and security controls, and our overall commitment to transparency, these are foundational principles and built into the core DNA of our company." CAC ¶ 142.  Consistent with these principles, Twitter's Privacy Policy sets out to ensure that every user irrespective of their location can simply understand and control the data Twitter collects about them, how it is used, and when it is shared. *Id.* ¶ 68 (citing Twitter Privacy Policy).  To that end, Twitter allows users to opt-out from sharing various personal data and user preferences.  *Id.* ¶ 141.

Consistent with its commitment to privacy and transparency, on August 6, 2019, Twitter Tweeted about the MAP-related bugs, linking to a post on its Help Center website titled, "An issue with your settings choices related to ads on Twitter." *Id.* ¶ 79; *see also* Ex. 2 (August 6, 2019 Tweet).  In that post, Twitter disclosed to its users that it had "recently found issues where your settings choices may not have worked as intended." Ex. 3 (Help Center).  Twitter explained that it had shared with advertising partners certain data (such as whether a user had engaged with an ad) and had made inferences about the devices users used, even where users had not given Twitter permission to do so.  *Id.*  Twitter disclosed that "[w]e fixed these issues on August 5, 2019," and apologized to its users:  "You trust us to follow your choices and we failed here. We're sorry this happened, and we are taking steps to make sure we don't make this mistake again." *Id.*

### C. Twitter Announces Q3 Revenue Within Guidance and Discloses Additional Information About the Effect of Fixing MAP Privacy Bugs

On October 23, 2019, Twitter announced its financial results for the third quarter ended September 30, 2019.  CAC ¶ 89.  Twitter announced Q3 revenue of $824 million, up nine

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

percent year-over-year (*see* Ex. 4 (Q3 Form 10-Q, cited at CAC ¶ 98) at 7), and within the guidance that Twitter had previously provided in late July.  *See* Ex. 5 (Q2 2019 Shareholder Letter, cited at CAC ¶ 104) at 11 (providing total revenue guidance for Q3 of $815 million to $875 million).  In Twitter's earnings press release and during its investor call to announce Q3 results, which was the first time that Defendants spoke to the market regarding the Company's revenues or the MAP bugs since the August 6 Tweet, Defendants disclosed that fixing the MAP bugs had negatively impacted revenue growth "by three or more points."  CAC ¶ 89.

In the October 23, 2019 earnings press release and associated call, Twitter discussed the steps it took to remedy the bugs announced in August, noting that it Tweeted about those steps as part of the Company's effort "to be transparent with people when things aren't working as expected."  *Id.* ¶ 91.  Twitter disclosed that remediation efforts as to the MAP bugs were ongoing and would continue into the fourth quarter, and that the remediation had caused less information to be shared with advertisers, driving a decline in revenue.  *Id.*

## III.   LEGAL STANDARD

To state a claim under Section 10(b) and Rule 10b-5 of the Securities Exchange Act, Plaintiffs must allege (1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation.  *See In re Atossa Genetics, Inc. Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017) (quoting *Reese v. Malone*, 747 F.3d 557, 567 (9th Cir. 2014)).  To survive dismissal, securities fraud claims must meet the exacting pleading standards of both Federal Rule of Civil Procedure 9(b) and the PSLRA.  Those exacting requirements "appl[y] to all elements of a securities fraud action."  *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).  In ruling on a motion to dismiss, courts "need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1132 (N.D. Cal. 2010).

## IV.   ARGUMENT

Plaintiffs have failed to allege facts demonstrating falsity, scienter, or loss causation with the requisite particularity as to any of the seven challenged statements, including statements on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   July 26 and 31, 2019, about Twitter's ongoing work to improve its MAP product (Statements 1-

2   2); a risk disclosure in Twitter's July 31, 2019 Q2 filing about undetected software errors

3   (Statement 3) and the accompanying Sarbanes-Oxley Act ("SOX") certification (Statement 4);

4   the August 6, 2019 Tweet about the software malfunction and Twitter's prompt fix of the privacy

5   issues caused by the bug (Statement 5); and September 4, 2019 statements by Mr. Segal about

6   ongoing work on the MAP product and the Asia market's historical focus on MAP (Statements

7   6-7).  The Complaint should be dismissed with prejudice.

8          **A.     Plaintiffs Do Not Plead a Material Misrepresentation or Omission**

9          Plaintiffs do not plead any facts showing that the seven challenged statements were false

10   or misleading in a way that would satisfy Rule 9(b) and the PSLRA.  Rule 9(b) requires plaintiffs

11   to plead falsity "with particularity."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.*

12   *Align Tech.*, *Inc.*, 856 F.3d 605, 613 (9th Cir. 2017).  In other words, "[a]verments of fraud must

13   be accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess v.*

14   *Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Cooper v. Pickett*, 137 F.3d 616,

15   627 (9th Cir. 1997)).  To plead falsity under the PSLRA, a complaint must "specify each

16   statement alleged to have been misleading, the reason or reasons why the statement is

17   misleading, and if an allegation regarding the statement or omission is made on information and

18   belief, the complaint shall state with particularity all facts on which that belief is formed."  15

19   U.S.C. § 78u-4(b)(1)(B).  And the plaintiff must "specify facts or evidence that show why the

20   statement was false at the time."  *Ronconi v. Larkin*, 253 F.3d 423, 431 (9th Cir. 2001).

21   Plaintiffs fall well short of these standards for each of the challenged statements.  Appendix A

22   provides a chart of the challenged statements.

23          1.     Statements 1-4:  Q2 Shareholder Letter & Quarterly Report

24          Plaintiffs challenge four statements in Twitter's Q2 2019 Shareholder Letter issued on

25   July 26, 2019, and its Q2 2019 Form 10-Q filed on July 31, 2019.  Plaintiffs claim that

26   Statements 1 and 2—that Twitter was "continuing [its] work" to improve the MAP product, and

27   that "work will take place over multiple quarters" and "any positive revenue impact will be

28   gradual"—were false or misleading because Defendants allegedly knew by July 26, 2019, that

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

software bugs and issues had delayed progress on an improved MAP product, and Defendants had "no reasonable basis to represent that MAP revenue would increase." CAC ¶¶ 104-108. Statement 3 is a risk factor in Twitter's Q2 2019 Form 10-Q about undetected software errors, which Plaintiffs claim was inadequate because it allegedly failed to reveal that "risks with respect to MAP had already materialized." *Id.* ¶¶ 109-110. Statement 4 concerns the SOX certification in the Q2 2019 10-Q, which Plaintiffs claim was materially false and misleading because the 10-Q allegedly contained false and misleading statements. *Id.* ¶ 111.

**As to Statements 1 and 2**, *first*, the Complaint lacks any specific allegations showing that the omitted facts existed at the time Twitter made these statements in late July 2019. Plaintiffs allege in conclusory fashion that Defendants already knew "by no later than the beginning of the Class Period," *i.e.*, July 26, 2019, about both the MAP bugs and their revenue impact (CAC ¶¶ 103, 105), but there is not a single alleged fact showing that Defendants had discovered the MAP bugs at the time. "Generically asserting in an undifferentiated manner" that Defendants knew by no later than the beginning of the Class Period (*id.* ¶ 103) is insufficient. *Norfolk Cty. Ret. Sys. v. Solazyme, Inc*., No. 15-CV-02938-HSG, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016). It is well settled that Plaintiffs must allege with "particularity why the statement was false *at the time it was made*." *Id.* (emphasis added); *see also In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *Veal v. LendingClub Corp*., 423 F. Supp. 3d 785, 808-09 (N.D. Cal. 2019); *In re Dynavax Sec. Litig*., No. 4:16-CV-06690-YGR, 2018 WL 2554472, at *6 (N.D. Cal. June 4, 2018). Nor are there any factual allegations indicating that the undiscovered bugs had *already* impacted advertiser spending or revenues at the time of Twitter's Q2 filings—which occurred *before* Twitter had even announced the privacy issues. Plaintiffs thus entirely fail to allege the requisite contemporaneous falsity.

**Second**, Defendants' "continuing our work" and "any positive revenue impact will be gradual" statements were not misleading. Plaintiffs themselves admit that MAP work was, in fact, continuing—they allege only that it was "delayed." CAC ¶ 108. Defendants did not make any assurances that the work would be completed on a specific timeline; instead, Defendant Segal plainly stated, "[w]e're still in the middle of that work." *Id.* ¶ 104. Plaintiffs nowhere

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   explain how any alleged delay rendered Defendants' statements misleading at the time they were

2   made—instead, they rely on "factual allegations [that] are almost entirely untethered to the actual

3   statements made by Defendants." *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1277

4   (N.D. Cal. 2019).  And while Plaintiffs allege that Defendants lacked a "reasonable basis to

5   represent that MAP revenue would increase" (CAC ¶ 105), Defendants never promised that it

6   would.  *See In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 839 (N.D. Cal. 2019) (finding

7   that company's statement about "work[ing] hard to protect" accounts was not misleading absent

8   disclosures about company's inability to track data, because plaintiffs did not allege

9   contemporaneous facts that defendants meant the statement as an assurance they could track

10  data).  Instead, Defendants plainly opined that "*any* positive revenue impact" from the not-yet-

11  completed improvements "will be gradual in its impact."  CAC ¶ 107 (emphasis added); *see also*

12  *id.* ¶ 104 ("[W]e're still at the stage where we believe that you would see its impact be gradual in

13  nature.").

14       ***Third***, Defendants' "continuing our work" and "any positive revenue impact will be

15  gradual" statements are non-actionable forward-looking statements.  The PSLRA defines a

16  forward-looking statement to include statements of "(1) financial projections; (2) plans and

17  objectives of management for future operations, (3) future economic performance, or (4) the

18  assumptions underlying or related to any of these issues."  *Police Ret. Sys. of St. Louis v.*

19  *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (citing *No. 84 Emp'r–Teamster*

20  *Joint Council Pension Trust Fund v. Am. W. Holding Corp*., 320 F.3d 920, 936 (9th Cir. 2003)

21  (internal quotation marks omitted)).  The Ninth Circuit has held that statements like these were

22  forward-looking because they were assumptions of future economic performance or reflected the

23  speaker's expectation of the future impact of a particular fact.  *See Intuitive Surgical*, 759 F.3d at

24  1059 (holding that statements such as "[g]ynecology plays a bigger and bigger role each day . . .

25  and I think will continue to be [a big player] and continue to expand" were non-actionable

26  forward-looking statements).  As discussed below with respect to Statement 3, Twitter provided

27  investors with detailed, meaningful risk disclosures about the specific risks to its advertising

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   revenues from both undetected software bugs and an "inability to help advertisers effectively

2   target ads." Ex. 6 (Q2 2019 10-Q) at 43-45, 49; *see also* Ex. 1 (10-K) at 14-16, 20.

3          **As to Statement 3**, Plaintiffs challenge one of Twitter's risk disclosures from its Q2

4   2019 10-Q, which warns that its products may "contain undetected software errors" and

5   "changes to existing products . . . could fail to attract users, content partners, advertisers and

6   platform partners or generate revenue." CAC ¶¶ 109-110. Plaintiffs claim that this risk factor is

7   materially misleading because it failed to reveal that the risks had already materialized. *Id.* ¶

8   110. But as noted above, Plaintiffs fail to plead any facts as to when Defendants learned about

9   the MAP-related bugs, let alone that Twitter's "business and operating results" had already

10  suffered any harm from the bugs, or that "changes to existing products" had already impacted

11  revenues. *Id.* ¶ 109; *see also In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d at 841 (rejecting

12  claim that risk factor was materially misleading where plaintiffs offered "no proof that future

13  risks stated in risk disclosures had already 'actually affected' [company's] reputation or stock");

14  *Kim v. Advanced Micro Devices, Inc.*, No. 5:18-CV-00321-EJD, 2019 WL 2232545, at *7 (N.D.

15  Cal. May 23, 2019) (rejecting claim that risk factor was materially misleading where plaintiffs

16  did not allege that AMD "had any contemporaneous reasons to believe" the potential risks had

17  already come to fruition). Moreover, Twitter's risk disclosures amply warned investors of the

18  specific risks to its advertising revenues from both undetected software bugs and an "inability to

19  help advertisers effectively target ads, including as a result of the fact that we do not collect

20  extensive personal information from our users." Ex. 6 (Q2 2019 10-Q) at 43-45, 49.

21         **As to Statement 4**, Plaintiffs challenge the SOX certifications in the Q2 2019 Form 10-Q

22  indicating that to the best of the signers' knowledge, the "report did not contain any untrue

23  statement of a material fact[.]" CAC ¶¶ 111-112. These statements cannot support an

24  independent claim if, as set forth above, the Plaintiffs have failed to plead that there are any

25  material misstatements in Twitter's Q2 2019 10-Q. As Plaintiffs fail adequately to plead the

26  falsity of those statements, this statement too must fail. *See In re Silicon Image, Inc. Sec. Litig.*,

27  No. C-05-456 MMC, 2007 WL 607804, at *9 (N.D. Cal. Feb. 23, 2007) (dismissing claim based

28  on SOX certification in Form 10-K/A where "plaintiffs have failed to sufficiently allege any

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

statement in the Form 10-K/A was false or misleading when made."); *Wanca v. Super Micro Comp., Inc.*, No. 5:15-cv-04049-EJD, 2018 WL 3145649, at *5-6 (N.D. Cal. Jun. 27, 2018) (similar).

### 2.   Statement 5:  August 6, 2019 Tweet

Plaintiffs challenge Twitter's August 6, 2019 notice to users—through both a Tweet and its User Help Center page—that Twitter had "recently discovered and fixed" an "issue with your settings choices related to ads on Twitter," whereby Twitter had shared certain user data even if users had not given permission in their settings to do so.  CAC ¶ 113.  Plaintiffs allege that these notifications were misleading because they failed to disclose that the software bugs had delayed Twitter's work on an improved MAP product, that Twitter had stopped sharing the affected user data with advertisers, and that this decision had impacted advertisers' ability to target advertising, which in turn caused a material reduction in demand for MAP advertising and Twitter's revenue.  CAC ¶ 114.  These allegations fail to state a claim for three reasons.

*First*, Plaintiffs fail to allege that the omitted facts existed at the time the statement was made.  Plaintiffs' use of the past tense (*e.g.*, "affected" or "impacted" advertising demand and revenues) is entirely unsupported and cannot possibly be plausible.  *Id*.  There are no specific facts pled that support Plaintiffs' conclusory allegations that Twitter's privacy setting fix had, by August 6, already caused a material reduction in demand for MAP advertising, or had already negatively impacted MAP revenue.  *Id.*  Under Plaintiffs' own theory—that Twitter reduced the user data it shared with advertisers *after* it discovered the MAP-related bugs, causing a decline in demand for advertising—the decline in advertising demand and resulting decline in MAP revenues could not have *already* occurred at the time the fix was announced on August 6.  *See In re Dynavax*, 2018 WL 2554472, at *6; *Veal*, 423 F. Supp. 3d at 808-09.

*Second*, Twitter's "recently discovered and fixed" statement is not misleading because nothing in the August 6 Tweet or Twitter's User Help Center post was inconsistent with the alleged omissions.  The notifications disclosed Twitter's discovery of the MAP-related bugs and the impact of the privacy malfunction on Twitter's *users*.  They also disclosed that Twitter was still conducting its investigation.  Defendants' statements did not address or imply anything at all

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

about an impact on *advertiser spending*, Twitter's ongoing work to improve its MAP product, or Twitter's revenues.  *See Irving Firemen's Relief & Ret. Fund v. Uber Techs*., No. 17-CV-05558-HSG, 2018 WL 4181954, at *5 (N.D. Cal. Aug. 31, 2018) (finding no falsity where statement did not "affirmatively le[a]d [investors] in a wrong direction (rather than merely omitted to discuss certain matters).") (quoting *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1101 (N.D. Cal. 2013)).  Although Plaintiffs claim that Twitter should have predicted in its August 6 notices to users that its privacy fix would materially impact advertiser demand and revenue and potentially delay its work improving MAP, Twitter did not make any statement one way or the other about these matters.  No reasonable investor could have been misled by the absence of a risk disclosure in Twitter's notice to its users about their privacy settings.  *See Colyer v. Acelrx Pharm., Inc*., No. 14-CV-04416-LHK, 2015 WL 7566809, at *6 (N.D. Cal. Nov. 25, 2015) (finding statement not misleading where it did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.") (quoting *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

  ***Third***, Twitter had already warned investors, in its 10-Q filing the week before, of exactly the risk about which Plaintiffs complain:  namely, that the discovery of software bugs "could result in . . . loss of advertising revenue."  Ex. 6 (Q2 10-Q) at 43-45.  Twitter had no obligation to repeat in its Tweet to users information that it had already disclosed.  *See, e.g.*, *Sanchez v. IXYS Corp.*, No. 17-cv-06441-WHO, 2018 WL 4787070, at *3 (N.D. Cal. Oct. 2, 2018) ("Publicly available information cannot be a material omission under federal securities laws."); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019) (finding statements not misleading where defendants disclosed allegedly omitted information).

    3.  Statements 6-7:  September 4, 2019 Citi Global Technology Conference

  Plaintiffs challenge statements made by Mr. Segal during the Citi Global Technology Conference on September 4, 2019, that "MAP work [was] ongoing" and Twitter "continued to sell the existing MAP product" (CAC ¶ 115) (Statement 6), and that Twitter's "strength just varies" from "one geography to another" and "Asia, for example, has tended to be more MAP-focused historically."  *Id*. ¶ 118 (Statement 7).  Plaintiffs allege that Mr. Segal failed to disclose

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1    that MAP demand and revenue had been "materially declining," that Defendants' work on an

2    improved MAP product was "off track," and that "Defendants' MAP product was struggling in

3    Asia." *Id.* ¶¶ 116-117, 119.  These statements fail to support a claim for a familiar three reasons.

4         *First*, once again, the Complaint lacks any specific factual allegations that the omitted

5    facts existed at the time Statements 6 and 7 were made.  While Plaintiffs allege that the

6    Individual Defendants received emails containing summaries of Key Metrics including CPE

7    information that supposedly demonstrated flagging demand for advertising services (*id.* ¶ 88),

8    these CPE-metric allegations provide no support for falsity.  Plaintiffs admit that the CPE

9    metrics "measure demand for Twitter's advertising products"—*plural*—not just the MAP

10   product.  *Id.* ¶ 46.  Thus, while Plaintiffs assert that Mr. Segal had observed "the deterioration of

11   Twitter's Key Metrics (CPE) for several weeks" (*id.* ¶ 116), they do not explain how an overall

12   CPE deterioration would have revealed anything at all about advertiser demand for MAP *alone*,

13   or MAP revenues *alone*, as opposed to all of the pay-for-performance advertising products in

14   Twitter's multi-billion dollar advertising business.  Moreover, and as discussed *infra* in Section

15   IV.B.1, Plaintiffs' allegations show only that Mr. Dorsey (not Mr. Segal) may have received the

16   Key Metrics emails—and only in 2015—years before the events alleged here.

17        The CPE-metric allegations themselves lack all required measure of specificity.

18   Plaintiffs do not allege what the CPE metric was as of September 4 (or any other date, for that

19   matter), or how much the CPE metric had allegedly "deteriorated" since the MAP bugs had been

20   discovered.  CAC ¶ 116.  Such imprecise allegations fall well short of the specificity required by

21   Rule 9(b) and the PSLRA.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir.

22   2002) (rejecting allegations that generally refer to the existence of data monitored by insiders but

23   do not "detail with particularity the content of such data."); *In re Silicon Graphics Inc. Sec.*

24   *Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (holding "that a proper complaint which purports to rely

25   on the existence of internal reports would contain at least some specifics from those reports as

26   well as such facts as may indicate their reliability"), *superseded by statute on other grounds*.

27        *Second*, Mr. Segal's statements were not misleading because they were not inconsistent

28   with the alleged omissions.  **As to Statement 6**, Mr. Segal's "ongoing" MAP work and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1    "continued" sale statements (CAC ¶ 115) did not imply anything at all about—and thus "bear no

2    connection to"—changes in MAP demand or revenues. *Jui-Yang Hong v. Extreme Networks,*

3    *Inc.*, No. 15-cv-04883-BLF, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017). Plaintiffs do

4    not contend that these statements were inaccurate. In fact, they admit that Twitter's MAP work

5    was ongoing (they allege only that it was "delayed" as a result of the software bugs). CAC ¶

6    114. While Plaintiffs vaguely allege that MAP work was "off track" (*id.* ¶ 108), they offer no

7    specifics about how it was purportedly off track, or even that Defendants had ever promised a

8    particular timeline. To the contrary, and as Plaintiffs recognize, Defendants repeatedly told

9    investors MAP would be a "continuing" effort. *Id.* ¶ 9. Read "in the context in which they were

10   made," Mr. Segal's general statements about "ongoing" work and "continued" sales did not

11   create a false impression about the timeline for completing improvements of the MAP product.

12   *See In re Intel Corp. Sec. Litig.*, No. 19-cv-00507-YGR, 2019 WL 1427660, at *10 (N.D. Cal.

13   Mar. 29, 2019).

14           Likewise, **as to Statement 7**, Plaintiffs do not allege that Mr. Segal's "Asia" statements

15   were in any way inaccurate. *See Uber Techs.*, 2018 WL 4181954, at *5 ("Plaintiff's allegations

16   are inactionable as they merely restate accurately reported historical information") (quotations

17   and alterations omitted). And Plaintiffs fail to offer any explanation as to how Mr. Segal's

18   statements about geographic variations "affirmatively led [investors] in a wrong direction (rather

19   than merely omitted to discuss certain matters)." *Id*. The description of Asia's historical

20   tendency to be more MAP-focused is not contradicted by any alleged facts and does not suggest

21   anything about Twitter's current MAP revenue at all.

22           ***Third***, Plaintiffs entirely fail to allege that any revenue impact from the MAP bugs was

23   material at the time of the September 4 statements—fewer than four weeks after Twitter

24   disclosed the existence of the bugs. *See M & M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*, No.

25   CV 17-1479 PA, 2017 WL 5635424, at *7 (C.D. Cal. Aug. 20, 2017) ("For a statement to be

26   actionable, the allegations must support both falsity and materiality at the time the statement was

27   made.") (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)); *see also City of Sunrise Fire*

28   *Pension Fund v. Oracle Corp.*, No. 18-CV-04844-BLF, 2019 WL 6877195, at *17 (N.D. Cal.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   Dec. 17, 2019) (dismissing claim for failure to plead materiality where plaintiff failed to

2   "allege[] sufficient facts to show that the revenue generated by [certain sales] tactics was

3   **material** to Oracle **at the time** [defendant] made the statement.") (emphasis in original).  Indeed,

4   even by the end of Q3 in October 2019, the total revenue drop attributed to the effect of the MAP

5   bugs was minimal, reducing advertising revenue growth by a mere "three or more points in Q3."

6   CAC ¶ 89.

7           **B.        The Complaint Fails to Allege a Strong Inference of Scienter**

8           Plaintiffs' complaint should be dismissed for failing to plead facts supporting a strong

9   inference of scienter.  The PSLRA requires Plaintiffs to "state with particularity facts giving rise

10  to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-

11  4(b)(2).  Plaintiffs must allege scienter with particularity for *each* defendant. *Or. Pub. Emps.*

12  *Ret. Fund*, 774 F.3d at 607.  To meet that standard, "a complaint must allege that the defendants

13  made false or misleading statements either intentionally or with deliberate recklessness." *Zucco*

14  *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009), as amended (Feb. 10, 2009)

15  (citing *In re Daou Sys., Inc. Sec. Litig*, 411 F.3d 1006, 1014-15 (9th Cir. 2005)).  Deliberate

16  recklessness means "intentional or knowing misconduct" and "mere recklessness or a motive to

17  commit fraud and opportunity to do so . . . are not sufficient to establish a strong inference of

18  deliberate recklessness." *Id.*  Rather, "the plaintiff must plead a highly unreasonable omission,

19  involving not merely simple, or even inexcusable negligence, but an extreme departure from the

20  standards of ordinary care, and which presents a danger of misleading buyers or sellers that is

21  either known to the defendant or is so obvious that the actor must have been aware of it." *Id.*

22  Moreover, "to qualify as 'strong' within the intendment of [the PSLRA], an inference of scienter

23  must be more than merely plausible or reasonable—it must be cogent and at least as compelling

24  as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

25  551 U.S. 308, 314 (2007).  The Ninth Circuit has repeatedly, and recently, recognized that this

26  "is not an easy standard to comply with—it is not intended to be—and plaintiffs must be held to

27  it." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also Nguyen*

28  *v. Endologix, Inc.*, --F. 3d --, No. 18-56322, 2020 WL 306977, at *7 (9th Cir. June 10, 2020).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

Plaintiffs' scienter allegations are based on (i) the Individual Defendants' purported close monitoring of the Company's Key Metrics (CAC ¶¶ 124-130), (ii) the general prominence of the MAP product and the impact of the software bugs on multiple advertising products (*id.* ¶¶ 131-137), and (iii) alleged privacy violations (*id.* ¶¶ 141-144).  In contrast to the usual scienter allegations in a securities fraud action, the Complaint is lacking in any allegations of unusual or suspicious trading, or any allegations from confidential witnesses attesting to the Individual Defendants' contemporaneous knowledge.  Indeed, the sole confidential witness (Confidential Informant or "CI-1") attests to the percentage of revenue attributed to the MAP product years *before* the class period.  *Id.* ¶ 63.  CI-1 has nothing at all to say about the CPE metric or Individual Defendants' purported close monitoring of it.  The allegations Plaintiffs do put forward fall far short of meeting the pleading standard for either the Individual Defendants or Twitter.  *See Nguyen*, 2020 WL 3069776, at *8-10 (finding plaintiffs' fraud theory implausible where complaint lacked any allegations that defendants had attempted to profit from false statements and instead relied on confidential witness allegations and internal reports without pleading any specifics).  Considered holistically, the more plausible inference is that Defendants did not harbor any intent to deceive and, in fact, sought to be transparent with Twitter's users about  the bugs that impacted their user settings.

### 1.    Monitoring of Key Metrics

"In most cases, the most straightforward way to raise an inference of scienter for a corporate defendant will be to plead it for an individual defendant."  *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008) (citation and brackets omitted).  Plaintiffs fail to take that straightforward path.  The only scienter allegation tied to the Individual Defendants is that they "closely monitored" certain Key Metrics, including CPE, and therefore purportedly knew or recklessly disregarded "the material negative impact on revenue caused by [the] purported fixes to software bugs."  CAC ¶ 126.  But Plaintiffs do not allege with any specificity how or when Defendants monitored those metrics, or how those metrics would have demonstrated a decline in MAP revenues, much less by how much, as of any particular date.  Absent allegations that the Individual Defendants were provided with specific information directly related to the alleged

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

fraud—the supposed failure to disclose the revenue impact from changes to the MAP product—Plaintiffs cannot establish that the Individual Defendants acted with scienter, and their "state of mind" cannot be imputed to Twitter.  *Id.* ¶¶ 138-140; *see also Nguyen*, 2020 WL 306977, at *10 (holding that allegations about a "stream of complaints and incident reports" were insufficient to demonstrate a strong inference of scienter where plaintiffs failed to allege any "details about these reports"); *Zucco*, 552 F.3d at 1000 (finding scienter allegations insufficient in the absence of particular allegations that individual defendants had access to disputed information).

      ***First***, Plaintiffs fail to plead that the Individual Defendants had access to any Key Metrics during the relevant timeframe, claiming only that it is "a reasonable inference" that they followed such Key Metrics.  CAC ¶ 88 n.9.  Such a conclusory footnote is not adequate to allege scienter.  Indeed, Plaintiffs' only factual basis for their claim is that written discovery from another (old) securities lawsuit in which Plaintiffs' counsel represents a different class of stockholders against Twitter, *In re Twitter, Inc. Securities Litigation*, Case No. 4:16-cv-05314-JST (N.D. Cal.), Dkt. No. 413-6, shows that the Individual Defendants received emails containing summaries of Key Metrics, including CPE, "at least once a day."  CAC ¶¶ 88 n.9, 125.  Far from it.  Those discovery responses show that (i) the Key Metrics emails were disseminated from early March 2015 through September 30, 2015—nearly **four years** before the events at issue in this litigation (Ex. 8 (Rog Responses) at 24, 33); and (ii) Mr. Dorsey was only a "likely subscriber" to the Key Metrics Summary emails, and Mr. Segal did not receive these emails at all because he was not employed by Twitter (*id.* at 33-35).  The temporal gap between 2015 and 2019 is fatal to Plaintiffs' allegation.  *See Brodsky*, 592 F. Supp. 2d at 1200-01 ("temporal gap belies the credibility of Plaintiffs' allegations"); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d at 848 (rejecting scienter allegations where alleged warning was given to individual defendant five years before the class period began).

      ***Second***, Plaintiffs fail to explain how the Individual Defendants would have known anything about declines in MAP revenue based on their access to Key Metrics generally, or the aggregated CPE metric specifically.  CAC ¶¶ 125-126.  None of those metrics is alleged to specifically break out MAP revenues, nor do Plaintiffs allege what those Key Metrics or CPE

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1    reflected as of any particular date.  Courts routinely reject generalized allegations about "data

2    monitoring" as insufficient to support allegations of scienter where plaintiffs fail to plead the

3    specific contents and relevance of the reports received.  *See Intuitive Surgical, Inc.*, 759 F.3d at

4    1063 (finding insufficient allegations about "[m]ere access to reports containing undisclosed

5    sales data); *Lipton*, 284 F.3d at 1036 (finding insufficient "negative characterizations of reports

6    relied on by insiders, without specific reference to the contents of those reports"); *Zucco*, 552

7    F.3d at 1000 (finding insufficient "allegations that senior management . . . closely reviewed the

8    accounting numbers generated . . . each quarter [], and that top executives had several meetings

9    in which they discussed quarterly inventory numbers").

10                    2.    Prominence of MAP Product and Impact on Multiple Products

11           Plaintiffs also advance a theory based on the purported general "importance and

12   prominence" of the MAP product and the impact of the bugs on multiple advertising products,

13   which they assert supports an inference that Defendants knew or recklessly disregarded "the

14   undisclosed material negative problems that were plaguing MAP during the Class Period."  CAC

15   ¶¶ 131-137.  In a "rare circumstance," allegations may suffice to plead scienter "where the nature

16   of the relevant facts is of such prominence that it would be 'absurd' to suggest that management

17   was unaware of the matter."  *Intuitive Surgical*, 759 F.3d at 1063 (citation omitted); *see also In*

18   *re Apple Inc. Sec. Litig.*, No. 19-CV-02033-YGR, 2020 WL 2857397, at *24 (N.D. Cal. June 2,

19   2020).  This is not such a rare circumstance.

20           ***First***, far from alleging the prominence of the MAP product, Plaintiffs admit that the

21   MAP product was just one of Twitter's many advertising products.  CAC ¶¶ 134-137 (describing

22   Twitter's "multiple ad products"); *see also* Ex. 1 (10-K) at 14 (describing Twitter's various

23   advertising products).  Plaintiffs allege that MAP revenue accounted for 20% of the Company's

24   global revenue (CAC ¶ 63), but the Complaint does not allege any sort of "devastating" revenue

25   impact at the time of the statements (or at any time).  *Berson v. Applied Signal Tech., Inc.*, 527

26   F.3d 982, 989 (9th Cir. 2008) (finding "absurd" that top management would not know about

27   devastating revenue impact of stop-work orders).  And in any event, Plaintiffs' allegation that

28   MAP accounts for 20% of revenues is based on a flawed confidential informant allegation:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   Confidential Informant 1, a former Twitter employee from 2014-2018.  CAC ¶ 63.  Where a

2   plaintiff relies on confidential witnesses, the witness "must be described with sufficient

3   particularity to establish their reliability and personal knowledge," *Zucco*, 552 F.3d at 995, and

4   the witness's accounts must be "contemporaneous" with the alleged misstatements.  *In re*

5   *Fusion-io, Inc. Sec. Litig.*, No. 13-CV-05368-LHK, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12,

6   2015).  Plaintiffs fail to allege CI-1's personal knowledge of the portion of Twitter's revenue

7   attributable to MAP, much less for the third quarter of 2019.  CI-1 was not employed by Twitter

8   in Q3.  CAC ¶ 63.  And Plaintiffs allegations that CI-1's role as an "AdOps Specialist" who

9   "worked with Twitter's advertising customers" do not establish personal knowledge of the

10  portion of Twitter's revenue attributable to MAP in Q3 2019.  Moreover, Plaintiffs do not allege

11  that CI-1 had any direct (or indirect) contact with any of the Individual Defendants and therefore

12  cannot provide reliable insight into the Defendants' state of mind.  *See Veal*, 423 F. Supp. 3d at

13  814 (finding that CWs failed to allege personal knowledge where there were no allegations of

14  direct or indirect contact with the individual defendants); *In re Accuray, Inc. Sec. Litig.*, 757 F.

15  Supp. 2d 936, 949 (N.D. Cal. 2010) (same).

16      Plaintiffs also allege that "new direct-response products like MAP were the primary

17  source of expected revenue growth for Twitter" (CAC ¶ 62), but this allegation is based on a

18  declaration from Twitter employee Michael Nierenberg from Plaintiffs' counsel's other

19  securities litigation against Twitter.  *Id.*  This declaration merely describes Mr. Nierenberg's

20  work in preparing revenue forecasts **in 2015**, and in no way plausibly supports Plaintiffs'

21  allegation in the Complaint about the revenue growth associated with Twitter's MAP product, in

22  2019 or otherwise.  *See* Ex. 9 (Nierenberg Decl.).  And even worse for Plaintiffs, Mr. Nierenberg

23  explains in the declaration that revenue guidance was *reduced* in 2015 as a result of "lower-than-

24  expected" MAP revenues.  *Id.* ¶¶ 12-13.

25      ***Second***, Plaintiffs allege that because "the software bugs affected multiple advertising

26  products, and . . . Defendants' ability to target users with relevant ads was so important and

27  prominent to Defendants' core business," Defendants knew or should have known that problems

28  were "plaguing MAP and other ad products . . . ."  CAC ¶ 137.  But Plaintiffs do not allege

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   anything about the purported "multiple advertising products," such as which other ad products

2   were impacted, the nature of the impact, or when those other, unnamed advertising products

3   were allegedly impacted by the software bugs affecting MAP.  Given Plaintiffs' failure to plead

4   the basic facts around what other products were supposedly affected by the MAP bugs, or when,

5   or to what degree, Plaintiffs have failed to plead the "rare circumstance" allowing an inference of

6   scienter based on the impact of the bugs on other products.  *Intuitive Surgical*, 759 F.3d at 1063.

7                              3.      <u>Alleged Privacy Violations</u>

8          Plaintiffs vaguely allege that violations of Twitter's Privacy Policy and a settlement with

9   the FTC support scienter.  CAC ¶¶ 141-144.  This allegation is not only entirely lacking in

10  specifics but also nonsensical.  Twitter promptly fixed the issue involving user data settings—

11  and Plaintiffs are complaining that the disclosure of that fix amounts to securities fraud.

12  Twitter's efforts to comply with its Privacy Policy cannot establish that it was simultaneously

13  acting with the intent to defraud investors.  In fact, voluntary disclosure of negative information,

14  like Twitter's disclosure of the MAP-related bugs, cuts against a finding of scienter where

15  plaintiffs fail to allege that defendants made any false or misleading statements.  *See In re Rigel*

16  *Pharm., Inc. Sec. Litig.*, 697 F.3d at 885 (finding that "voluntarily publicly disclosed"

17  information undermined scienter); *McGovney v. Aerohive Networks, Inc.*, No. 18-CV-00435-

18  LHK, 2019 WL 8137143, at *23 (N.D. Cal. Aug. 7, 2019) (finding that company's voluntary

19  disclosure of negative information undermines an inference of a scienter).  Moreover, the mere

20  existence of an FTC settlement—which Plaintiffs reference only in passing without any

21  particular allegations as to the contents or applicability of that settlement to their claims—is

22  insufficient.  *See In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d at 849 (rejecting allegation that

23  FTC Decree was sufficient to establish scienter where plaintiffs alleged that it "put Facebook on

24  notice that its representations concerning its privacy practice needed to be completely accurate")

25  (internal quotations omitted).

26                              4.      <u>Considered Holistically, the More Plausible Inference is Nonculpable</u>

27          Considered holistically, Plaintiffs' Complaint is bereft of any allegation as to when

28  Defendants could have known of the revenue impact of the MAP bug fix, or any allegation that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   Mr. Dorsey or Mr. Segal did not actually believe their statements were true or engaged in any

2   duplicitous behavior.  The far more probable inference is that Twitter discovered an error in its

3   software that inadvertently shared more user information than Twitter had intended, and

4   promptly fixed those privacy issues by stopping the sharing of information.  Twitter then

5   disclosed that fix to its users, consistent with Twitter's stated goal of transparency, and

6   apologized to its users.  It also disclosed that its investigation into the issue was ongoing.  At its

7   next quarterly earnings release, the very first time the Company made any statement to the

8   market about its Q3 revenues or the revenue effect of the MAP bugs, Twitter disclosed the

9   revenue impact, which did not even cause Twitter to miss prior revenue guidance for Q3.  It is

10  one thing to allege that Twitter may not have accurately predicted the impact that its pro-privacy

11  fix would have on Q3 MAP revenue (which, in fact, ended up being minimal), but it is quite

12  another to allege that Defendants' conduct was "highly unreasonable" or an "extreme departure

13  from the standards of ordinary care."  *Zucco*, 552 F.3d at 991.  Plaintiffs do not and cannot meet

14  that standard.

15  　　　Moreover, Plaintiffs do not allege any improper stock sales by any individual defendant

16  during the class period.  "While 'the absence of a motive allegation is not fatal,' it may

17  significantly undermine a plaintiff's theory of fraud."  *Bodri v. GoPro, Inc*., 252 F. Supp. 3d 912,

18  933 (N.D. Cal. 2017) (citing *Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc*., No.

19  11-01016 SC, 2012 WL 685344, at *8 (N.D. Cal. Mar. 2, 2012)).  Plaintiffs allege that

20  Defendant Segal sold Twitter shares between August and October 2019 (CAC ¶ 32), but

21  Plaintiffs omit those sales from their scienter allegations (*id*. ¶¶ 123-144), presumably because

22  each sale was effected pursuant to a Rule 10b5-1 plan.  Exs. 10-13 (Forms 4).[2]  "In general,

---

[2] As detailed further in the Request for Judicial Notice filed herewith, courts may take judicial notice of an SEC Form 4 "to prove that stock sales were made pursuant to a Rule 10b5–1 trading plan."  *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059 (N.D. Cal. 2012); *see also In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d at 828-29 (taking judicial notice of Forms 4 "to show[] only that a Rule 10b5-1 plan existed and that stock sales were made pursuant to that plan").  Because Plaintiffs have alleged Mr. Segal's trading in the Complaint, it is appropriate for the Court to consider his Forms 4.  *Compare Shenwick v. Twitter, Inc*., 282 F. Supp. 3d 1115, 1124 (N.D. Cal. 2017) (declining to take judicial notice of Forms 4 because the "Complaint mentions no stock sales of any kind.").

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1  automatic sales made pursuant to Rule 10b5-1 plans do not support a strong inference of

2  scienter." *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1056 (N.D. Cal. 2018); *Kovtun v.*

3  *VIVUS, Inc.*, No. C 10-4957 PJH, 2012 WL 4477647, at *21 (N.D. Cal. Sept. 27, 2012) (trades

4  made pursuant to Rule 10b5-1 trading plan not suspicious), *aff'd sub nom. Ingram v. VIVUS,*

5  *Inc.*, 591 F. App'x 592, 593 (9th Cir. 2015).

6        **C.    The Complaint Fails to Allege With Particularity Loss Causation**

7        Plaintiffs' Section 10(b) claim fails for the additional, independent reason that Plaintiffs

8  have not established loss causation—the "causal relationship between a material

9  misrepresentation and the economic loss suffered by an investor." *Loos v. Immersion Corp.*, 762

10 F.3d 880, 887 (9th Cir. 2014).  To meet this burden, Plaintiff must allege specific facts

11 establishing "that the defendant's fraud was *revealed* to the market and *caused* the resulting

12 losses." *Id.* (emphasis in original) (citation omitted).  Plaintiffs seek to establish this element by

13 pointing to a single price drop on October 24, 2019, following the announcement of revenue

14 results for Q3 2019.  CAC ¶ 147.  But Plaintiffs cannot establish that the price decline on

15 October 24, 2019, was caused by the revelation of fraudulent activity.  To the contrary, Plaintiffs

16 cite analyst reports reflecting that the drop was due to investors' expectations that "the

17 company's ad delivery technology will perform flawlessly [and] Twitter's Q3 revenue shortfall

18 is evidence that its technology did not work properly," and that "TWTR has been selling ads for

19 a decade, so these kinds of execution and technical issues are obviously disappointing . . . ." *Id.*

20 ¶ 122.

21        Plaintiffs do not allege, with particularity or at all, how these alleged investor reactions

22 pertained to the revelation of fraud, as opposed to simply the wholly unremarkable proposition

23 that investors were dissatisfied with the Company's technology performance.  Not all adverse

24 performance is the product of malfeasance, and nothing in the disclosures on October 24, 2019,

25 disclosed even a hint of fraud.  Courts in this circuit have routinely dismissed securities fraud

26 claims arising out of disappointing earnings announcements. *See, e.g., Loos*, 762 F.3d at 887-88

27 (defendant's disappointing earnings were insufficient to establish loss causation where the

28 earnings results did not "reveal any information from which revenue accounting fraud might

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1  reasonably be inferred"); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064

2  (9th Cir. 2008) ("So long as there is a drop in a stock's price, a plaintiff will always be able to

3  contend that the market 'understood' a defendant's statement precipitating a loss as a coded

4  message revealing the fraud.").

5      **D.**    **The Complaint Fails to State a Claim Under Section 20(a)**

6      As a Section 20(a) claim is derivative of an underlying primary violation and the

7  Complaint fails to allege such a violation, the Section 20(a) claim should be dismissed.  *See*

8  *Lipton*, 284 F.3d at 1035 n.15.

9  **V.**    **CONCLUSION**

10      For these reasons, Defendants respectfully request that the Complaint be dismissed with

11  prejudice.

12  DATED:  June 12, 2020           LATHAM & WATKINS LLP

13                            */s/ Michele D. Johnson*
Michele D. Johnson (Bar No. 198298)

14                             *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor

15                           Costa Mesa, California 92626-1925
Telephone:  +1.714.540.1235

16                           Facsimile:  +1.714.755.8290

17                           Elizabeth L. Deeley (Bar No. 230798)

18                           *elizabeth.deeley@lw.com*
505 Montgomery Street, Suite 2000

19                           San Francisco, California 94111-6538
Telephone:  +1.415.391.0600

20                           Facsimile:  +1.415.395.8095

21                           Hilary H. Mattis (Bar No. 271498)

22                           *hilary*.mattis@lw.com
140 Scott Drive

23                           Menlo Park, CA 94025-1008
Telephone:  +1.650.328.4600

24                           Facsimile:  +1.650.463.2600

25                           Andrew B. Clubok (*pro hac vice*)
Susan E. Engel (*pro hac vice*)

26                           *andrew.clubok@lw.com*
*susan.engel@lw.com*

27                           555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone:  +1.202.637.2200

28                           Facsimile:  +1.202.637.2201

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANTS' NOT. OF MOT. AND MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for Defendants *Twitter, Inc.,
Jack Dorsey and Ned Segal*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24