1  LATHAM & WATKINS LLP
   Michele D. Johnson (Bar No. 198298)
2    *michele.johnson@lw.com*
   650 Town Center Drive, 20th Floor
3  Costa Mesa, California 92626-1925
   Telephone: +1.714.540.1235
4  Facsimile: +1.714.755.8290

5  Elizabeth L. Deeley (Bar No. 230798)
     *elizabeth.deeley@lw.com*
6  505 Montgomery Street, Suite 2000
   San Francisco, California 94111-6538
7  Telephone: +1.415.391.0600
   Facsimile: +1.415.395.8095

8
   Hilary H. Mattis (Bar No. 271498)
9    *hilary.mattis@lw.com*
   140 Scott Drive
10 Menlo Park, CA 94025-1008
   Telephone: +1.650.328.4600
11 Facsimile: +1.650.463.2600

12 Andrew B. Clubok (*pro hac vice*)
   Susan E. Engel (*pro hac vice*)
13   *andrew.clubok@lw.com*
     *susan.engel@lw.com*
14 555 Eleventh Street, N.W., Suite 1000
   Washington, D.C. 20004-1304
15 Telephone: +1.202.637.2200
   Facsimile: +1.202.637.2201

16
   Attorneys for Defendants *Twitter, Inc.,*
17 *Jack Dorsey, and Ned Segal*

18

19                    UNITED STATES DISTRICT COURT

20                   NORTHERN DISTRICT OF CALIFORNIA

21                          OAKLAND DIVISION

22 IN RE TWITTER, INC. SECURITIES          Case No.: 4:19-cv-07149-YGR
   LITIGATION
23                                          **DEFENDANTS' REPLY IN SUPPORT OF**
                                            **MOTION TO DISMISS THE**
24 This Document Relates To:               **CONSOLIDATED CLASS ACTION**
                                            **COMPLAINT**
25      ALL ACTIONS
                                            Date: October 13, 2020
26                                          Time: 2:00 p.m.
                                            Courtroom: 1
27                                          Hon: Yvonne Gonzalez Rogers

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT ............................................................................................................... 1

    A.   Plaintiffs Have Not Pled A False Or Misleading Statement ................................ 1

        1.   Statements 1-2:  Statements in Q2 Shareholder Letter & Quarterly Report ................................................................................. 2

        2.   Statement 3:  Risk Disclosures In Quarterly Report ................................ 5

        3.   Statement 4:  SOX Certifications in Quarterly Report ............................ 6

        4.   Statement 5:  August 6, 2019 Tweet ...................................................... 6

        5.   Statements 6-7:  Mr. Segal's Statements at September 4 Citi Conference ...................................................................................... 7

    B.   Plaintiffs Fail Adequately to Plead Scienter ...................................................... 9

        1.   Plaintiffs' Core Operations Theory Fails ................................................ 9

            a.   Metrics Allegations Do Not Support Scienter .............................. 9

            b.   The Importance of Advertising Does Not Support Scienter ....................................................................................... 11

            c.   Twitter's Commitment to User Privacy Does Not Support Scienter ........................................................................ 12

        2.   Mr. Segal's 10b5-1 Stock Sales Do Not Support Scienter ..................... 13

        3.   Plaintiffs' Reference to Corporate Scienter Is Insufficient..................... 14

        4.   Plaintiffs' Allegations Taken as a Whole Do Not Support Scienter .................................................................................................. 14

    C.   Plaintiffs Have Not Pled Loss Causation.......................................................... 15

    D.   Plaintiffs Have Not Pled a Control Claim......................................................... 15

III. CONCLUSION........................................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## CASES

4

*In re Apple Inc. Sec. Litig.,*
5     No. 19-cv-02033-YGR, 2020 WL 2857397 (N.D. Cal. June 2, 2020)......................7, 9, 12, 13

6 *Azar v. Yelp, Inc.,*
    No. No. 18-cv-00400-EMC, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ........................2, 3
7

8 *Berson v. Applied Signal Tech., Inc.,*
    527 F.3d 988 ...............................................................................................................................12

9 *Bodri v. GoPro, Inc.,*
10     252 F. Supp. 3d 912 (N.D. Cal. 2017) ......................................................................................15

11 *Brody v. Transitional Hosp. Corp.,*
    280 F.3d 997 (9th Cir. 2002) ......................................................................................................6
12

13 *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.,*
    963 F. Supp. 2d 1092 (E.D. Wash. 2013) .................................................................................15

14 *In re Ditech Comms. Corp. Sec. Litig.,*
15     No. C 05-02406 JSW, 2006 WL 2319784 (N.D. Cal. Aug. 10, 2006) .....................................13

16 *In re Facebook, Inc. Sec. Litig.,*
    405 F. Supp. 3d 809 (N.D. Cal. 2019) ..................................................................................5, 13
17

18 *Fadia v. FireEye, Inc.,*
    No. 5:14-cv-05204-EJD, 2016 WL 6679806 (N.D. Cal. Nov. 14, 2016)..................................14

19 *Flynn v. Sientra, Inc.,*
20     No. CV 15-07548 SJO, 2016 WL 3360676 (C.D. Cal. June 9, 2016).........................................3

21 *Golub v. Gigamon Inc.,*
    372 F. Supp. 3d 1033 (N.D. Cal. 2019) ......................................................................................5
22

23 *Gross v. GFI Grp., Inc.,*
    310 F. Supp. 3d 384 (S.D.N.Y. 2018).......................................................................................14

24 *In re Intuitive Surgical Sec. Litig.,*
25     No. 5:13-cv-01920-EJD, 2014 WL 7146215 (N.D. Cal. Dec. 15, 2014) ...........................11, 12

26 *Irving Firemen's Relief & Ret. Fund v. Uber Techs.,*
    No. 17-cv-05558-HSG, 2018 WL 4181954 (N.D. Cal. Aug. 31, 2018)............................6, 7, 8

27 *Khoja v. Orexigen Therapeutics, Inc.,*
28     899 F.3d 988 (9th Cir. 2018) ..................................................................................................7, 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ............................................................................10, 15

*Lloyd v. CVB Fin. Corp.*,
No. CV 10-06256 MMM, 2012 WL 12883517 (C.D. Cal. Aug. 21, 2012) ...........................12

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ............................................................................15

*Luna v. Marvell Tech. Grp. Ltd.*,
No. 15-cv-05447-RMW, 2016 WL 5930655 (N.D. Cal. Oct. 12, 2016)................................12

*McGovney v. Aerohive Networks, Inc.*,
367 F. Supp. 3d 1038 (N.D. Cal. 2019) ............................................................3, 7, 8

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ............................................................................15

*Mississippi Pub. Emps.' Ret. Sys. v. Boston Sci. Corp.*,
523 F.3d 75 (1st Cir. 2008) ................................................................................2

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ............................................................................14

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
No. 15-cv-02938-HSG, 2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ................................2

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ............................................................................14

*Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019) ......................................................................13

*Osher v. JNI Corp.*,
302 F. Supp. 2d 1145 (S.D. Cal. 2003) ..................................................................3

*In re Pivotal Sec. Litig.*,
3:19-cv-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020)....................................4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ............................................................................9

*In re Quality Sys. Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ........................................................................5, 10

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ..................................................................... *passim*

*Rihn v. Acadia Pharm. Inc.*,
No. 15-cv-00575 BTM(DHB), 2016 WL 5076147 (S.D. Cal. Sept. 19, 2016).....................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

*Robb v. Fitbit Inc.*,
No. 16-cv-00151-SI, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017)..........................................11

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .................................................................................................13

*Scheuneman v. Arena Pharm., Inc.*,
840 F.3d 698 (9th Cir. 2016) ...................................................................................................4

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F. 3d 970 (9th Cir. 1999) ..................................................................................................4

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ...............................................................................................11

*Webb v. SolarCity Corp.*,
884 F.3d 844 (9th Cir. 2018) .................................................................................................15

*Williams v. Globus Med., Inc.*,
869 F.3d 235 (3d Cir. 2017)......................................................................................................5

*Yourish v. California Amplifier*,
191 F.3d 983 (9th Cir. 1999) ...................................................................................................2

*Zelman v. JDS Uniphase Corp.*,
376 F. Supp. 2d 956 (N.D. Cal. 2005) ...................................................................................10

*Zucco Partners, LLC, v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ................................................................................10, 11, 14

**STATUTES**

15 U.S.C. § 78u-5(i)(1)(A) .......................................................................................................5

**RULES**

Rule 9(b) ...........................................................................................................................2, 8

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Twitter is committed to protecting the privacy of the people who use its service.  To that end, when Twitter discovered that particular account settings choices were affected by software bugs, causing certain data to be shared without account holders' permission, it promptly stopped sharing the data and informed both the people affected and the general public of the issue.  While Plaintiffs try to contort Twitter's transparent and privacy-protective actions into securities fraud, Defendants' Opening Brief established that Plaintiffs' claims fail for several independent reasons, and Plaintiffs' Opposition does nothing to salvage their claims.

Critically, Plaintiffs fail to plead any false or misleading statement.  The Opposition is a morass of factually unsupported theories and distorted interpretations of the challenged statements.  None of these is an adequate substitute for what the Complaint lacks: well-pled facts establishing that any challenged statement was materially false or misleading at the time it was made.

Plaintiffs' scienter arguments are even more flawed.  Lacking any confidential witnesses who worked at Twitter during the Class Period, suspicious stock sales, or other typical bases for scienter arguments, Plaintiffs fall back on arguments about Twitter's "core operations"—in other words, the MAP product was such a purportedly critical operation of Twitter that Defendants must have known about the bugs and their effect.  But absent any well-pled facts even suggesting that Defendants actually knew about a revenue impact, this case simply does not present the type of extreme circumstances required to support a core operations theory.

Finally, Plaintiffs' bare reliance on disappointing earnings results is patently insufficient to allege loss causation.  The Court should therefore dismiss the CAC[1] with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs Have Not Pled A False Or Misleading Statement

---

[1] Unless otherwise defined, capitalized terms have the meanings set forth in the Consolidated Class Action Complaint ("CAC") Dkt. No. 50 and Defendants' Motion to Dismiss the Consolidated Class Action Complaint.  Dkt. No. 53.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1        1.    Statements 1-2:  Statements in Q2 Shareholder Letter & Quarterly Report

2        The Opposition confirms that Plaintiffs have not established that the purportedly omitted

3    information existed at the time of the July 26 Q2 2019 Shareholder Letter and July 31 Q2 2019

4    Form 10-Q.  Indeed, the CAC fails to include any facts suggesting that Defendants knew, as of

5    July 2019, that the technical bugs even existed.  Opp. 9-10; CAC ¶¶ 104-108; *see also Norfolk*

6    *Cty. Ret. Sys. v. Solazyme, Inc.*, No. 15-cv-02938-HSG, 2016 WL 7475555, at *3 (N.D. Cal.

7    Dec. 29, 2016) (dismissing 10(b) claim where "[t]he allegations omit contemporaneous facts that

8    would establish a contradiction between the alleged materially misleading statements and

9    reality").

10        Plaintiffs instead speculate that the omitted facts must have existed at the time of the

11    challenged July statements because those statements were made "*just 11 days*" before the August

12    6 Tweet.  Opp. at 9-10.  However, Plaintiffs' temporal-proximity argument is insufficient to

13    satisfy Rule 9(b).  *See Yourish v. California Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999)

14    ("temporal proximity . . ., without more, is insufficient to satisfy Rule 9(b)").  Plaintiffs fail to

15    allege any particularized facts showing that Twitter had discovered and fixed the issue with

16    users' settings by the time of the July statements.  The case law Plaintiffs cite only underscores

17    their pleading failure.  Opp. at 9 n.5.  In each case, there was contemporaneous evidence

18    showing that defendants already knew information that contradicted the challenged statements.

19    *See Azar v. Yelp, Inc.*, No. No. 18-cv-00400-EMC, 2018 WL 6182756, at *11-12, 17-18 (N.D.

20    Cal. Nov. 27, 2018) (defendant had stated that Yelp began addressing local advertising concern

21    in January, a month before misleadingly reassuring investors about Yelp's local advertising

22    model); *Mississippi Pub. Emps.' Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 90-91 (1st Cir.

23    2008) (company statements indicated that it had implemented changes to address a product

24    defect while publicly maintaining that the product was not defective).  By contrast, Plaintiffs do

25    not and cannot point to any statement prior to the August 6 Tweet suggesting that Twitter had

26    already discovered the bugs, let alone addressed the resulting user setting issues, delayed work

27    on MAP, or incurred any revenue impact at all.

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   Indeed, the only "fact" supporting Plaintiffs' temporal proximity argument is that it

2 allegedly takes three to six months to fix "fundamental" software bugs, and Twitter purportedly

3 stated in its August 6 Tweet that the bugs had already been fixed. Opp. at 9-10; CAC ¶ 82. But

4 as discussed *infra*, the August 6 Tweet disclosed that Twitter had addressed user setting concerns

5 arising from the bugs; it said nothing about whether Twitter had fixed the technical bugs.

6 Indeed, Plaintiffs' entire theory of the case is that Twitter had *not* fixed the technical bugs by the

7 time of the Tweet, and instead had stopped sharing account holder data with advertisers (which

8 impacted advertiser demand and revenue). Opp. at 12-13. Plaintiffs cannot have it both ways.

9 *See Osher v. JNI Corp.*, 302 F. Supp. 2d 1145, 1159 (S.D. Cal. 2003) (courts need not accept

10 contradictory allegations). Moreover, Plaintiffs' "3 to 6 months" allegation is based solely on

11 confidential witness allegations that are entitled to no weight. According to Plaintiffs, the sole

12 confidential witness stopped working at Twitter before the Class Period even began, and the

13 Complaint contains no facts specifying the confidential witness's prior responsibilities at Twitter

14 or how she/he can reliably opine about technical bugs affecting MAP after his/her work at

15 Twitter ended. *See, e.g.*, *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1052-53

16 (N.D. Cal. 2019) (applying clear Ninth Circuit law requiring confidential witnesses to be

17 "described with sufficient particularity to establish their reliability and personal knowledge").

18   Mr. Segal's post-Class Period statement that the technical bugs were discovered during

19 Q3 2019 also does not support Plaintiffs' temporal-proximity argument. CAC ¶ 91; Opp. at 9-

20 10.[2] Identifying technical bugs *during* Q3 (July through September) is entirely consistent with

21 identifying them *after* the July statements. Defendants made this timeline clear by explaining

22 that, "when we discovered that [technical bug], one, we Tweeted about it [on August 6], which

23 we often do to try to be transparent with people when things aren't working as expected. And

---

[2] Plaintiffs' cited cases are inapposite as none involved a situation like the one at issue here, where the alleged "admission" about the discovery of the bugs in Q3 is entirely consistent with Defendants' discovery of the bugs after the late July 2019 statements. Opp. at 18 n.12 (citing *Azar*, 2018 WL 6182756, at *22 (February 2017 statements were misleading in light of issues "manifesting in late 2016 and early 2017"); *Flynn v. Sientra, Inc.*, No. CV 15-07548 SJO (RAOx), 2016 WL 3360676, at *14 (C.D. Cal. June 9, 2016) (registration statement was misleading in light of internal investigation "concluded weeks before" filing)).

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

two, we turned off the setting so that it would work as expected." CAC ¶ 91.

Even if Plaintiffs had adequately alleged that the omitted facts existed at the time of the challenged July statements, those statements—that Twitter was "still in the middle" of and "continuing" work on an improved MAP product and "any positive revenue impact will be gradual"—were not misleading because they did not "affirmatively create an impression of a state of affairs that differ[ed] in a material way from the one that actually existed." *In re Pivotal Sec. Litig.*, 3:19-cv-03589-CRB, 2020 WL 4193384, at *10 (N.D. Cal. July 21, 2020) (citation omitted). There is no suggestion in the Complaint (or reality) that Twitter had ceased work on MAP or incurred a material revenue impact by the time of the July statements. This case is a far cry from *Scheuneman v. Arena Pharm., Inc.* (Opp. at 12), where the defendants stated that "all" animal studies supported the safety of a new drug, even though one of those animal studies showed that the drug was potentially carcinogenic and defendants "knew that the animal studies were the sticking point with the FDA." 840 F.3d 698, 708 (9th Cir. 2016).

Plaintiffs also quibble with the amount of progress Twitter had made on an improved MAP product. Opp. at 9; *see also* CAC ¶ 116 (alleging MAP work was "off track"). But they do not allege any deadline that Twitter missed (Opp. at 10-11), or any facts suggesting that Twitter was *not* "still in the middle of that work" (Opp. at 9). While Plaintiffs now assert that Twitter had already reallocated engineers to remediate the (undiscovered) software bugs, *id.*, the Complaint lacks a single factual allegation suggesting that the reallocation had occurred at the time of the July statements, or that any such reallocation had already caused a "material[] delay[]." Indeed, the Complaint contains no details whatsoever about the reallocation of engineers, including how many were reallocated and when. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F. 3d 970, 984-85 (9th Cir. 1999) (affirming dismissal where vague allegations invited court to "speculate" as to the "severity of the problems").

Lastly, Plaintiffs argue that the PSLRA's safe harbor does not protect Defendants' predictions about potential future revenues from an improved MAP product because Defendants had no reasonable basis for them, and because the statements are "inextricably intertwined with the present." Opp. at 10-11. Neither argument has merit. First, Plaintiffs themselves allege that

an improved MAP product would have a positive revenue impact. *See, e.g.*, CAC ¶¶ 56-64. There is not a single factual allegation suggesting that at the time of the challenged revenue predictions Twitter did not believe that there *would be* an improved MAP product. Second, Twitter's statements about potential future revenues are textbook forward-looking statements. 15 U.S.C. § 78u-5(i)(1)(A) ("'forward-looking statement' means . . . a projection of revenues . . ., or other financial items"). Courts routinely hold that the PSLRA's safe harbor protects forward-looking statements about revenue that necessarily have some relation to current events. *See, e.g.*, *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1048 (N.D. Cal. 2019) ("It strains logic to suggest that it is possible to make a forward looking statement that is not in at least some way based on a belief about the present state of things… The Updated Case C Projections are classic forward-looking statements because they pertain to revenues and other financial data"). Plaintiffs' reliance on *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1141-42 (9th Cir. 2017), is misplaced. Opp. at 10. In that case, the Ninth Circuit identified statements like the revenue projections at issue here as forward-looking. 865 F.3d at 1142 (revenue projections are protected by the PSLRA safe harbor).

2.   Statement 3:  Risk Disclosures In Quarterly Report

Plaintiffs assert that risk disclosures in the Q2 2019 Form 10-Q warning that undetected software bugs "could harm our business and operating results" were false because software bugs had already been detected at the time. Opp. at 11-12. That is wrong. Plaintiffs do not allege with particularity that any software bugs had already been detected by the time of the Q2 2019 Form 10-Q, let alone that those bugs had already impacted the business. *Supra* Section II.A.1. Courts have held that risk disclosures concerning business impacts are only misleading where the *business impact* has already materialized. *See In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 841 (N.D. Cal. 2019) ("For a risk disclosure to be false, Plaintiffs must allege facts indicating that the risk factor was already affecting [the company] to the extent that Defendants' statements were false when made.") (citation omitted); *see also Williams v. Globus Med., Inc.*, 869 F.3d 235, 242-43 (3d Cir. 2017) (affirming dismissal where plaintiffs "failed to adequately

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

plead that the risk about which [defendant] warned—the risk of adverse effects on sales as a result of the loss of a single independent distributor—had actually materialized at the time").

### 3.   Statement 4:  SOX Certifications in Quarterly Report

As set forth in Defendants' Motion, because Plaintiffs fail to allege that the Q2 2019 Form 10-Q contained any false and misleading statements, the SOX certifications are inactionable.  Mot. at 10-11.  The Opposition does nothing to rebut this argument and, therefore, these SOX certifications cannot support a claim for securities fraud.

### 4.   Statement 5:  August 6, 2019 Tweet

Plaintiffs argue that Twitter's August 6, 2019 Tweet concerning the privacy implications of the bugs was misleading because Defendants had not fixed the technical bugs, but rather had just stopped sharing user data with advertisers.  Plaintiffs also argue that Twitter did not disclose that its decision to stop sharing user data had caused a purportedly immediate and material reduction in advertising demand.  Opp. at 12.  Plaintiffs' arguments fail.

Plaintiffs do not contest that, by August 6, Twitter had addressed user setting concerns related to the bugs by simply turning off the capability to share certain user data.  CAC ¶¶ 81-88.  Indeed, they cite Mr. Segal's statement to that effect.  *See id.* ¶ 91.  Instead, Plaintiffs strain the meaning of the Tweet as conveying that the technical bugs themselves had been fixed.  Opp. at 12.  That is far from what the Tweet's plain language and context conveyed, and is not an impression affirmatively created by the Tweet.  *See Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  The Tweet—and the accompanying Help Center disclosure—was directed to users; it stated that Twitter had discovered issues with users' settings about data sharing that raised concerns, and that *the issues with users' settings* had been fixed.  Ex. 2; Ex. 3.  The disclosures did not indicate that anything beyond the user setting issue had been fixed.  *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012) (disclosure reporting results of clinical trial was not misleading even though it omitted adverse facts because "the subsequent release of more extensive information" was "not inconsistent with the results that originally were reported"); *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, No. 17-cv-05558-HSG, 2018 WL 4181954, at *5 (N.D. Cal. Aug. 31, 2018) (finding no falsity where

1    statement did not "affirmatively le[a]d [investors] in a wrong direction (rather than merely

2    omitted to discuss certain matters)") (citation omitted).

3         The August 6 Tweet (and Help Center disclosure) likewise did not mislead investors

4    about any purportedly material impact on advertiser spending.  To begin with, the Opposition

5    implausibly contends that less than one day after Twitter stopped sharing user data, there was an

6    immediate "material decline" in advertising demand.  Opp. at 12-13 (citing CAC ¶¶ 84-86).  The

7    Complaint contains no such allegations.  CAC ¶¶ 84-86; *McGovney*, 367 F. Supp. 3d at 1059

8    (falsity allegations were legally insufficient where they lacked specifics regarding the severity of

9    the revenue impact).  But even if there had been an immediate decline, the Tweet—which was

10   directed at users, not investors—did not "affirmatively broach" the topic of advertising spending.

11   *In re Apple Inc. Sec. Litig.*, No. 19-cv-02033-YGR, 2020 WL 2857397, at *17 (N.D. Cal. June 2,

12   2020) (considering context of statements and finding disclosures not misleading where they did

13   not "affirmatively broach[] any topic to make the lack of additional disclosure misleading"); *see*

14   *also Uber Techs*., 2018 WL 4181954, at *5.  Contrary to Plaintiffs' suggestion, this is not a

15   question of materiality (Opp. at 13-14); rather, the issue is whether the August 6 Tweet was

16   *misleading* about revenues.  *Rigel*, 697 F.3d at 880 n.8 ("The materiality of information is

17   different from the issue of whether a statement is false or misleading.").  Lastly, to the extent

18   Plaintiffs are complaining that the Tweet failed to disclose a potential *future* revenue impact,

19   Twitter had already disclosed exactly that risk in its 10-Q risk disclosure.  Mot. at 12.

20         5.   Statements 6-7:  Mr. Segal's Statements at September 4 Citi Conference

21         ***Statement That MAP Work Is Ongoing***.  Plaintiffs again complain about statements that

22   Twitter's MAP work was still continuing, pointing this time to Mr. Segal's statements that

23   "MAP work is ongoing" and "[w]e've continued to sell the existing MAP product but people

24   know that new one is coming, and we haven't really talked about a timeline around it."  Ex. 7 at

25   7; *see also* Opp. at 14; CAC ¶ 115.  They claim these statements were materially misleading

26   absent disclosure that "current sales of MAP ads had been materially declining."  Not so.

27         "Falsity is alleged when a plaintiff points to defendant's statements that directly

28   contradict what the defendant knew at that time."  *Khoja v. Orexigen Therapeutics, Inc.*, 899

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                              DEFENDANTS' REPLY IN SUPP. OF MOT. TO
                               DISMISS CONS. CLASS ACTION COMPLAINT
                               Case No.: 4:19-cv-07149-YGR

F.3d 988, 1008 (9th Cir. 2018).  Again, the Complaint lacks any allegation that Defendants knew that MAP sales were materially declining at the time of the September 4 statement.  Plaintiffs allege only (and without sufficient factual support) that Defendants monitored the CPE metric, which measured demand for advertising *products* and *not* just MAP.  Mot. at 13; CAC ¶ 116.  A metric about products in general does not directly contradict any statement about just one of those products specifically.  Mot. at 13.  Moreover, the Complaint contains no specific allegations about what the CPE metric even revealed as of September 4—a fatal failure under the PSLRA and Rule 9(b).  *See id.*; *McGovney*, 367 F. Supp. 3d at 1059.

Lacking an answer for these deficiencies, Plaintiffs insist that the Court may not evaluate the adequacy of their pleading because the question involves materiality.  Opp. at 15.  Plaintiffs are wrong.  Falsity is plainly an issue appropriate at the motion to dismiss stage.  *See Khoja*, 899 F.3d at 1008; *Rigel*, 697 F.3d at 880 n.8.  Here, Plaintiffs have failed to allege that Defendants had knowledge of an omitted fact concerning revenues that directly contradicts the statement, and therefore have failed to plead falsity.  *Id.*  And even as to materiality, Plaintiffs must at least include allegations that any revenue impact from the MAP bugs was material at the time of the September 4 statement, yet all they do is point to the CPE metric and the decline of three points for the entire third quarter—there are no allegations about the MAP decline as of September 4. Mot. at 14; *see also* Opp. at 18 n.12.

***Historical Tendency Of Asia To Be More MAP-focused***.  According to Plaintiffs, the comment by Mr. Segal that "Asia, for example, has tended to be more MAP-focused historically" was materially misleading because it was made in response to a question asking "why the particular strength in monetization outside the US." Ex. 7 at 9.  Plaintiffs claim the response "suggest[ed] that the Asian market for MAP thrived at the time" when it did not.  Opp. at 15.  Plaintiffs' distorted interpretation is unsupportable.  The general comment, stated in the past tense about what occurred "historically," did not affirmatively create an impression that MAP was "thriving" at the time.  *Uber Techs.*, 2018 WL 4181954, at *5.  Furthermore, while Plaintiffs argue that MAP was "struggling in Asia," they fail to plead any contemporaneous facts

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1  showing such a supposed struggle had occurred as of September 4, 2019, and certainly fail to
2  plead contemporaneous awareness by Mr. Segal.  *See infra* Section III.B.

3  **B.  Plaintiffs Fail Adequately to Plead Scienter**

4  Unable to plead scienter directly, Plaintiffs attempt to plead scienter through a "core
5  operations" theory and minimal stock sales by Mr. Segal.  They cannot do so.  *See In re Apple*,
6  2020 WL 2857397, at *24 (core operations theory of scienter requires allegations of "actual
7  access to the disputed information" or the prominence of the relevant fact to the corporation).

8  1.  Plaintiffs' Core Operations Theory Fails

9  Establishing a core operations theory is not easy.  *See Police Ret. Sys. of St. Louis v.*
10 *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).  "A plaintiff [seeking to invoke the
11 core operations doctrine] must produce either specific admissions by one or more corporate
12 executives of detailed involvement in the minutia of a company's operations, such as data
13 monitoring . . . or witness accounts demonstrating that executives had actual involvement in
14 creating false reports."  *Id.* (citation omitted); *see also In re Apple*, 2020 WL 2857397, at *24.
15 Plaintiffs utterly fail to satisfy these requirements.

16 a.  Metrics Allegations Do Not Support Scienter

17 ***Key Metrics Emails.***  The Opposition confirms that the Complaint contains no specific
18 allegations that an Individual Defendant received, or even monitored, any MAP data—let alone
19 MAP data that was inconsistent with a challenged statement.  Opp. at 16-18.  Instead, Plaintiffs
20 assert that Mr. Dorsey and Mr. Segal reviewed different data, the CPE metric, and that a
21 declining performance of MAP would have been reflected in the CPE metric.  Opp. at 16-17.

22 Plaintiffs' CPE argument does not support any inference of scienter.  To begin with, the
23 Complaint does not adequately allege that either Individual Defendant actually reviewed CPE.
24 The Opposition concedes that the source underlying Plaintiffs' CPE allegation (interrogatory
25 responses from a prior litigation) described only a seven-month period *nearly five years ago*, and
26 in any event does not state that either Individual Defendant actually received the CPE metric.
27 Mot. at 17.  Indeed, the allegation does not even apply to Mr. Segal, who was not employed by
28 Twitter during that time period.  While pre-class period awareness of relevant events may in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1   some circumstances inform a scienter analysis, courts require a more direct and close connection

2   than the nearly five-year gap here.  *See, e.g.*, *Zucco Partners*, *LLC*, *v. Digimarc Corp.*, 552 F.3d

3   981, 996 (9th Cir. 2009) (noting that witnesses "were not employed by Digimarc during the time

4   period in question and have only secondhand information about accounting practices at the

5   corporation during that year").[3]

6          Further, the Complaint does not allege a single fact about what the CPE metric showed at

7   the time of the challenged statements.  While Plaintiffs argue that Individual Defendants would

8   have known that a decline in CPE was caused by the user setting "fix" (Opp. at 19), they skip the

9   first step:  the Complaint lacks any factual allegations showing that the CPE metric *had already*

10  *declined* (thus showing any revenue decline) by the time of any of the statements at issue.  Still

11  more problematic, even if Plaintiffs had alleged the purported decline and its timing, the

12  Complaint contains no facts showing what could be inferred from a *CPE* decline about *MAP*

13  *revenues*.  Plaintiffs admit that the CPE metric concerns a myriad of advertising products, not

14  just MAP.  Opp. at 3, 17; *see also* Mot. at 4; Ex. 1 at 54 (CPE tracks cost per ad engagement,

15  defined as user interaction with any of Twitter's pay-for-performance advertising products).

16  There are no factual allegations about a relationship between CPE and MAP that show that an

17  Individual Defendant would have been aware that any decline in CPE was tied to MAP.

18         Plaintiffs cite no case where scienter was adequately pled that involved facts even

19  remotely analogous to those here.  Opp. at 17 n.11 (citing, for example, *In re Quality Sys.*, 865

20  F.3d at 1145).  Nor could they.  A cogent and compelling inference of scienter cannot be based

21  on such an invitation for speculation about what information Individual Defendants purportedly

22  had at the time of the challenged statements.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,

23  1036 (9th Cir. 2002) (scienter allegations were insufficient where plaintiffs did not provide

24

---

25  [3] Plaintiffs' own cases demonstrate this principle.  Opp. at 19 (citing *In re Quality Sys.*, 865 F.3d at 1145 (COO's allegations supported scienter where officer had personal knowledge of the individual defendants' access to specific reports and their contents and had conversations with a defendant based on the reports); *Rihn v. Acadia Pharm. Inc.*, No. 15-cv-00575 BTM(DHB), 2016 WL 5076147, at *9 (S.D. Cal. Sept. 19, 2016) (inferring knowledge from statements *during the class period*); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 970 (N.D. Cal. 2005) (events from the *months* immediately preceding the class period were relevant to the "contemporaneous state of mind" of the speakers)).

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

specific allegations about what data revealed). Contrary to Plaintiffs' suggestion (Opp. at 20), the Ninth Circuit has not abandoned the requirement of specificity for internal information. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087-88 (9th Cir. 2002) (no scienter where no pleading of "corroborating details" of reports, including "their contents").[4]

Tellingly, Plaintiffs run away from the CPE metric, and assert that "Defendants monitored numerous MAP-related metrics." Opp. at 19 (citing CAC ¶¶ 59-61). But here too, the Complaint contains no particularized facts indicating that any Individual Defendant reviewed any of those unspecified metrics, what those metrics were, or what they showed and when. *Id.*

***Continuing MAP Work.*** Plaintiffs assert that because the Individual Defendants made general statements about continuing work on MAP, they must have known that such work had "been significantly interrupted." Opp. at 20-21. Again, Plaintiffs have failed to allege adequately that such a delay even occurred. In any event, that Defendants omitted comment about a delay from an unspecific statement that MAP work is "still continuing" is not such an "extreme departure from the standards of ordinary care" that the Individual Defendants knew or must have known that the omission would mislead, especially where they never expressed a timeline or schedule for that work. *See Zucco*, 552 F.3d at 991 (holding that a plaintiff must allege specific facts showing "a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it") (citation omitted).

b.   The Importance of Advertising Does Not Support Scienter

Plaintiffs further attempt to invoke the core operations theory by arguing that the software bugs affected Twitter advertising products other than MAP, and therefore affected Defendants' core advertising business. Opp. at 22. But Plaintiffs fail to specify any particular advertising product beside MAP that was purportedly affected by the bugs, and instead generically assert that they impacted Twitter's other pay-for-performance or targeted ad

---

[4] Plaintiffs' cases are inapposite. Opp. at 20 (citing *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD, 2014 WL 7146215, at *5 (N.D. Cal. Dec. 15, 2014) (defendants recited relevant internal information directly to CW); *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2017 WL 219673, at *8 (N.D. Cal. Jan. 19, 2017) (CW created reports, personally presented them to defendants, described reports' contents)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                                    DEFENDANTS' REPLY IN SUPP. OF MOT. TO
                                      DISMISS CONS. CLASS ACTION COMPLAINT
                                      Case No.: 4:19-cv-07149-YGR

products.  Opp. at 22.  Unspecific allegations that an issue affected a company's core business are insufficient to establish scienter.  *See, e.g.*, *In re Apple*, 2020 WL 2857397, at *24 (allegations about throttling iPhone and iPhone's importance to Apple were insufficient to establish scienter).  Lacking particularized allegations, Plaintiffs were required, but failed, to demonstrate that this is one of the "rare circumstance[s]" where a business impact may be held to establish scienter.  *Intuitive Surgical*, 759 F.3d at 1063.  The revenue impact here does not come close to the "absurd" levels required for such a showing.  *Id.*

Plaintiffs concede that declarant Mr. Neirenberg's analysis from 2015 at most shows "the importance of MAP revenue to Twitter in the time leading up to the Class Period."  Opp. at 21. While Plaintiffs insist that these allegations provide "insight" into the relevant time period, Plaintiffs must allege facts supporting a devastating revenue impact sufficient to imply scienter. *Luna v. Marvell Tech. Grp. Ltd.*, No. 15-cv-05447-RMW, 2016 WL 5930655, at *12 (N.D. Cal. Oct. 12, 2016) ("The premature recognition of 7-8% of revenue cannot plausibly be described as 'core' to [defendants'] operations.").  They have not.  While Plaintiffs assert that the MAP issues were associated with a $65 million revenue impact in full year 2019 (Opp. at 22), that argument only highlights their failure to allege the sort of devastating impact necessary to invoke the core operations theory.  Plaintiffs cite *Berson v. Applied Signal Tech., Inc.*, where the Ninth Circuit found that stop-work orders that imposed a revenue decline of approximately 80% created an inference of scienter.  527 F.3d at 988 n.5.  By contrast, Twitter reported total revenues of $3,042,359,000 in 2018; thus, a $65 million revenue impact amounted to less than 2.2% of total revenue.  *See* Ex. 1 at 46.  Plaintiffs claim that evaluating the revenue impact is improper here (Opp. at 22), but numerous courts grant motions to dismiss based on Plaintiffs' failure to adequately plead the revenue impact sufficient for a core operations theory of scienter.  *See Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2012 WL 12883517, at *6 (C.D. Cal. Aug. 21, 2012) (2.5% revenue hit was insufficient to establish scienter).

c.   <u>Twitter's Commitment to User Privacy Does Not Support Scienter</u>

Nor do Plaintiffs' allegations about the importance to Twitter of its users' privacy support an inference of scienter.  Plaintiffs argue that because Twitter publicly committed to safeguard

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

users' privacy, and entered into a consent decree with the FTC along the same lines, the Individual Defendants "should have known of the Company's privacy violations and MAP-related software issues."  Opp. at 23.  Tellingly, Plaintiffs completely ignore recent case law cited in Defendants' motion that rejected Plaintiffs' argument.  *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d at 849 (rejecting allegation that FTC Decree was sufficient to establish scienter where plaintiffs alleged that it "put 'Facebook on notice' that 'its representations concerning its privacy practice needed to be completely accurate'").  Plaintiffs' own case law is inapposite, as there, the individual defendant "received reports that contained detailed statistics about stale alerts" and "admitted that she was working to fix the stale alert problem," in addition to the FTC consent decree.  Opp. at 23 (citing *Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484-85 (9th Cir. 2019)).  Additionally, Plaintiffs' attempt to chastise Defendants for attempting to comply with an FTC consent decree fails to link any knowledge of user setting issues to knowledge of a material revenue effect.  And finally, Plaintiffs' allegation that the August 6 Tweet itself was false and misleading (Opp. at 24) does nothing to contradict the fact that Twitter's voluntary disclosure of the negative information about which Plaintiffs complain weighs against a finding of scienter.  *See In re Rigel*, 697 F.3d at 885.

2.   Mr. Segal's 10b5-1 Stock Sales Do Not Support Scienter

Plaintiffs also wrongly assert that Mr. Segal's sale of 10% of his unrestricted Twitter shares supports an inference of scienter, even though such sales were made pursuant to a Rule 10b5-1 plan.  Opp. at 23.  The Complaint lacks any factual allegations to satisfy Plaintiffs' burden of showing that those sales were "dramatically out of line with prior trading practices, at times calculated to maximize the personal benefit from undisclosed inside information." *Ronconi* v. *Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (citation omitted); *see also In re Apple*, 2020 WL 2857397, at *21.  Moreover, Plaintiffs do not allege that Mr. Dorsey sold any shares during the Class Period, and allegations of stock sales by one defendant do not support a strong inference of scienter "where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made." *Ronconi*, 253 F.3d at 436; *see also In re Ditech Comms. Corp.*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

*Sec. Litig.*, No. C 05-02406 JSW, 2006 WL 2319784, at *8 (N.D. Cal. Aug. 10, 2006).  In any event, sales of 10% of Mr. Segal's unrestricted shares are insufficient to establish scienter.  *See Fadia v. FireEye, Inc.*, No. 5:14-cv-05204-EJD, 2016 WL 6679806, at *15 (N.D. Cal. Nov. 14, 2016) (addressing sales of 17.6%, 8.7%, and 15% of Defendants' total stock holdings, "courts have held that higher percentages of stock sales failed to raise a strong inference of scienter").

### 3.   Plaintiffs' Reference to Corporate Scienter Is Insufficient

While Plaintiffs assert that Twitter had constructive knowledge of all facts known by the Individual Defendants and "senior officers" (Opp. at 24), the Ninth Circuit has not adopted the corporate scienter doctrine, and Plaintiffs have not alleged a "dramatic[]" falsehood that would warrant its application.  *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014).

### 4.   Plaintiffs' Allegations Taken as a Whole Do Not Support Scienter

Plaintiffs' failure to plead scienter is readily apparent when the Complaint's allegations are considered holistically.  "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference."  *Zucco*, 552 F.3d at 991.  In sum, Plaintiffs' theory is that Defendants voluntarily, promptly, and publicly addressed a software bug impacting users' privacy by ceasing to disclose certain user information and then lied to investors to conceal an immediate material effect on revenue, only to then disclose a revenue impact at the end of the fiscal reporting period.  This theory is far from cogent and compelling.  As courts recognize, "a short respite from an inevitable day of reckoning does not demonstrate scienter."  *Gross v. GFI Grp., Inc.*, 310 F. Supp. 3d 384, 395 (S.D.N.Y. 2018).  This Court does not have to "check [its] disbelief at the door."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).  The more cogent inference is that Twitter promptly announced the user setting issue to its users without predicting what effect its privacy-promoting fix would have on MAP revenue in the third quarter—which effect, in fact, ended up being minimal.

Plaintiffs' failure to plead a strong inference of scienter is even more glaring when the Complaint's allegations are considered alongside the facts and inferences weighing against

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

scienter: (i) Defendants voluntarily disclosed their pro-privacy fix, as well as the effect on revenue, *see, e.g.*, *Rigel*, 697 F.3d at 885; (ii) prior to the allegedly misleading statements, Twitter disclosed to the market, in detail, the precise risk that undetected software bugs "could harm our business and operating results," *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1142 (E.D. Wash. 2013) ("disclosure of risks and problems further 'negates an inference that the company acted with intent to defraud'") (citation omitted); and (iii) Plaintiffs do not allege that Mr. Dorsey sold stock, and as discussed above, Mr. Segal's sales do not support scienter, *Bodri v. GoPro, Inc*., 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017) ("While 'the absence of a motive allegation is not fatal,' it may significantly undermine a plaintiff's theory of fraud.") (citation omitted); *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (recognizing that "a lack of stock sales can detract from a scienter finding").

### C.    Plaintiffs Have Not Pled Loss Causation

In response to Defendants' arguments that Plaintiffs cannot plead loss causation, Mot. at 22-33, Plaintiffs point only to stock reaction following the announcement of Q2 2019 results. Opp. at 24-25.  But such vague allegations concerning reactions to Twitter's announcement of quarterly results are insufficient to allege loss causation.  *See, e.g., Loos v. Immersion Corp*., 762 F.3d 880, 887-89 (9th Cir. 2014) (disappointing earnings were insufficient to establish loss causation where the earnings results did not "reveal any information from which revenue accounting fraud might reasonably be inferred"); *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1064 (9th Cir. 2008) ("So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud.").

### D.    Plaintiffs Have Not Pled a Control Claim

As Plaintiffs have failed to state an underlying primary violation, their Section 20(a) claim should also be dismissed.  *Lipton*, 284 F.3d at 1035 n.15.

## III.    CONCLUSION

For these reasons, Defendants respectfully request that the Complaint be dismissed with prejudice.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR

1    DATED:  September 25, 2020              LATHAM & WATKINS LLP

2                                           */s/ Michele D. Johnson*
                                            Michele D. Johnson (Bar No. 198298)
3                                            *michele.johnson@lw.com*
                                            650 Town Center Drive, 20th Floor
4                                           Costa Mesa, California 92626-1925
                                            Telephone:  +1.714.540.1235
5                                           Facsimile:  +1.714.755.8290

6                                           Elizabeth L. Deeley (Bar No. 230798)
                                             *elizabeth.deeley@lw.com*
7                                           505 Montgomery Street, Suite 2000
                                            San Francisco, California 94111-6538
8                                           Telephone:  +1.415.391.0600
                                            Facsimile:  +1.415.395.8095

9
                                            Hilary H. Mattis (Bar No. 271498)
10                                           *hilary.mattis@lw.com*
                                            140 Scott Drive
11                                          Menlo Park, CA 94025-1008
                                            Telephone:  +1.650.328.4600
12                                          Facsimile:  +1.650.463.2600

13                                          Andrew B. Clubok (*pro hac vice*)
                                            Susan E. Engel (*pro hac vice*)
14                                           *andrew.clubok@lw.com*
                                             *susan.engel@lw.com*
15                                          555 Eleventh Street, N.W., Suite 1000
                                            Washington, D.C. 20004-1304
16                                          Telephone:  +1.202.637.2200
                                            Facsimile:  +1.202.637.2201

17
                                            Attorneys for Defendants *Twitter, Inc.,*
18                                          *Jack Dorsey, and Ned Segal*

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' REPLY IN SUPP. OF MOT. TO
DISMISS CONS. CLASS ACTION COMPLAINT
Case No.: 4:19-cv-07149-YGR